In re the MARRIAGE OF Julia NEU-
BERN, Petitioner-Respondent,

and

Ralph Neubern, Respondent-Appellant.

No. 36894.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 9, 1976.

Motion for Rehearing or Transfer
Denied April 13, 1976.

Raymond A. Bruntrager, Sr., St. Louis,
for appellant.

Julius H. Berg, St. Louis, for respondent.

NORWIN D. HOUSER, Special Judge.

Action by Julia Neubern for dissolution of her marriage to Ralph Neubern, contracted on September 12, 1963. The circuit court dissolved the marriage and found the parties possessed of the following marital property: a residence located at 5825 Lotus Avenue in the City of St. Louis, a package liquor business, a joint savings account and five rooms of household furniture. The court awarded Julia the residence; all furniture, except three items; the savings account, and $10,000 in cash payable by Ralph at the rate of $183 per month until fully paid. In addition Julia was awarded maintenance of $160 per month for 12 months. Ralph was awarded the liquor business. No order was made with respect to a 1973 Cadillac automobile titled in Ralph's name. Ralph was ordered to pay Julia's attorney a fee of $650. Costs were assessed against Ralph, who has appealed, claiming (1) error in awarding maintenance to Julia on the ground that she is healthy, capable of earning substantial wages and was working at time of decree; (2) abuse of discretion in the division of the marital property in a grossly unequal manner, and (3) error in awarding a grossly excessive attorney's fee and because Julia had sufficient property, including marital property awarded her, to pay her attorney.

Under the provisions of § 452.330, RSMo 1969 the court on dissolution of a marriage is obligated to divide the marital property between the spouses in just proportions after considering all relevant factors, including each spouse's contribution to the acquisition of the marital property, including the contribution of a spouse as a homemaker; the value of the property set apart to each spouse; the economic circumstances of each spouse at time the property is divided, and the parties' conduct during the marriage.

The parties lived together for ten years before separating. No children were born of the marriage. The family home was purchased in 1965 for $10,500. Julia provided the down payment of $400 from the proceeds of an insurance policy on which she paid the premium. The house, which has depreciated, has a present value of $10,000. There are three mortgages on the house totaling around $9,500. The first mortgage (balance due $5,748) requires monthly payments of $110. A second mortgage is being paid at the rate of $73.33 per month. A third mortgage is for $800. There was testimony that the parties' equity in the house is less than $2,000. From these facts the equity appears to be $500. The parties owe no debts other than the mortgages. The parties bought "quite a few" war bonds in their joint names, "twenty five or fifty" of them, but there was no evidence of the denominations or present value of bonds.

The $4,000 savings account represents receipts from the pinball machine in the liquor store. For the first few years Julia worked there 7 days a week from 9:30 a. m. to 11 p. m. Monday through Friday, and from 9 a. m. to midnight on Friday and Saturday. During the last three years of the operation they closed on Sunday.

Ralph is a butcher by trade. He works in Granite City, Illinois for the Army Aviation Systems Command. He makes $5.84 an hour wages, 40 hours a week, with 2 or 3 hours overtime about six days a month. The parties' joint 1973 federal income tax return shows that Ralph's gross wages that year were $14,309. His 1970 wages were $8,500, the same in 1971, and approximately $9,000 in 1972. His 1974 gross wages were "about" $9,000 or $10,000. Ralph customarily brought home $200 every two weeks. Julia would pay current bills with the $200, supplemented by money from the liquor store. All current bills for living expenses have been paid. On days when he worked at his butcher job Ralph would ordinarily spend 2 or 3 hours waiting on customers at the liquor store. On days off he would spend 4 or 5 hours at the store. Each night Julia took $3 and Ralph took $3 from the store receipts. On Saturdays each would take $5 as wages. Ralph customarily deposited the liquor store receipts in a checking account when any money was left over

after paying current household expenses. Store expenses were paid from the checking account, which was nil at time of trial.

The tax return showed that net profits made at the store in 1973 were $680. The profit and loss statement attached to the return shows an inventory at the end of 1973 in the amount of $2,855.

For telephone, utilities, food, clothing, transportation, dental and medical care, insurance, recreation and miscellaneous expenses Julia asked for maintenance in the sum of $400 per month.

Prior to her marriage Julia, who had a 10th grade education, worked as a clerk in a drugstore, as a shoe cutter, pressboard operator and as a hospital technician. She testified that she was capable of working at time of trial; that she had no physical, mental or emotional disabilities. The record does not show her age. It was stated in oral argument and not denied that she is in her middle forties.

The parties separated because of Ralph's physical abuse of Julia; his continual drinking; cursing her in public; unexplained absences on weekends. He would leave home after the liquor store closed on Saturday night and not return until the early hours of Sunday morning. There were frequent unexplained telephone calls on the parties' unlisted number made by females asking for Ralph. Ralph made constant threats against Julia. Ralph told Julia that if the divorce went through Julia would be walking down the street and her brains would be blown out; if she "got the store" he would blow up the store; if she "got the house" he would blow up the house. He fought with Julia continually. He kicked her. Once he bit her, as a result of which she sought medical attention. On one occasion Ralph choked Julia until she passed out. On numerous occasions he hit and struck her. One of her teeth was knocked loose. She bled as a result of one physical attack on Julia. Julia admitted that during family arguments she had called Ralph dirty names and that one time in self-defense she hit him with a telephone when he started to hit her. The record reveals nothing with respect to her contribution as a homemaker, except her testimony that she cooked on Sundays and Mondays, and that for evening meals at the liquor store she would warm up for Ralph and herself what was left over from Sunday.

■ We find that the circuit court had before it the following marital property for just apportionment between the parties:

(1) The package liquor business;

(2) The residence property;

(3) 5 rooms of furniture, value not assessed;

(4) Joint savings account of $4,000;

(5) 1973 Cadillac, value not assessed;

(6) United States bonds.

The circuit court awarded Julia (2), (3), and (4), plus $1,920 maintenance, payable in 12 monthly instalments of $160 each, plus $10,000 payable in monthly instalments of $183. The total value of the awards to Julia was upwards of $17,000, plus whatever the furniture is worth. For his part of the marital property Ralph was awarded (1), valued at $2,855, and three items of used household articles and appliances. Neither Cadillac nor war bonds was mentioned in the decree. The Cadillac is being purchased on time. The monthly payments are $153 and are Ralph's obligation. We are not informed of the value of Ralph's equity in the Cadillac. In sum, Ralph received a $2,855 liquor inventory, an equity of unknown value in a used Cadillac, a used air conditioner, television set and bedroom suite.

Ralph estimated his monthly expenses for utilities, food, clothing, laundry, cleaning, transportation, gas and bridge toll, car payment, medical and dental and insurance at $740. The decree required him to pay Julia a total of $343 each month. On this basis Ralph's total monthly outlay would be $1,083, or about $13,000 a year. In addition, he was bound to pay $800 for a new canopy on the house and the $650 attorney's fee. His average yearly income 1970–1974 was approximately $10,000.

Considering the four criteria named in § 452.330, RSMo 1969, we are of the opinion

that the circuit court abused its discretion in dividing the marital property; that the decree entered is clearly erroneous. It is heavily and unduly weighted in favor of Julia. The net score under this decree, as far as money and property is concerned, is approximately: Julia, plus $17,000; Ralph, minus $10,000 plus the equity in the Cadillac. This is not a just and equitable apportionment, and if Ralph's future income does not substantially exceed the average of his income for the 5-year period preceding trial (and there is no evidence of any such prospect) the circuit court will have decreed an impossibility.

There is no question that each spouse contributed materially and substantially to the acquisition of the modest amount of marital property accumulated by these parties during the 10 years they lived together. There is no question that the conduct of Ralph during the marriage was disruptive of the marital relationship. While Julia's conduct on some occasions left something to be desired, the balance on the merits tipped considerably in favor of Julia. Ralph's conduct during the marriage is one important factor to be considered but it is not the overwhelmingly decisive factor.

█ It is apparent that Julia's principal interest and preoccupation during the marriage was the operation of the package liquor business, in which she invested long hours of her time over a period of many years. It is likewise clear that without her, or someone else, Ralph could not have operated the liquor business, because he had a full-time job elsewhere as a butcher. There is little testimony on net business earnings but what evidence there is clearly demonstrates that it would be uneconomical for Ralph to pay the wages of a store manager to operate the business in his absence, while attending to his regular job. Ralph requested that the circuit court award the liquor business to Julia. Instead the court awarded it to Ralph, who obviously cannot handle it and keep his steady employment as a butcher. On appeal Ralph renews his request that Julia be awarded the liquor business, and we are persuaded that this is

proper and it is so ordered. On remand Ralph will execute appropriate papers to transfer his interest in the package liquor store business to Julia.

█ As to the residence: While it is likely both parties signed the notes and mortgages, there is no such evidence, so we are not advised whether one or both of the parties are legally obligated by contract to pay the $9,500 due on the residence property. Under the decree Julia retains the house and Ralph is obliged to give her a quitclaim deed and pay her $183 per month until $10,000 is paid (an amount considered sufficient to enable her to make the payments). Whether the $183 includes interest, insurance and taxes was not shown. The house is mortgaged to the hilt. There is only a small equity in the house, amounting to about $500. There is no real value there; Julia would profit little by selling the house at this time. The house does provide her shelter. We find no justification, however, in requiring Ralph, in effect, to purchase a house for Julia at the termination of this marriage. As framed the decree insures continuing friction between these parties. Ralph suggests the adverse psychological effect upon him of the house being occupied by his ex-wife and he being forced to make the mortgage payments for a long term of years "instead of correcting the problem between these two parties." Insofar as possible the decree should provide for a clean break without unnecessary entangling provisions. The provision of the decree ordering Ralph to pay Julia $10,000 is vacated and set aside. The house is set over to Ralph as his property with the obligation on him to meet the monthly payments on the house. The decree will require Ralph to hold Julia harmless on account of any contractual obligation she may have incurred on the notes and mortgages, and will require Julia to give Ralph a quitclaim deed.

As to the furniture: An equitable division of the furniture between the parties should be made, after holding a hearing and taking evidence on what it consists of, its

value, and the relative needs of the parties after Julia moves from the residence.

The $4,000 savings account was properly awarded to Julia.

The Cadillac is specifically awarded to Ralph.

The war bonds are divided equally between the parties.

■■ On the question of maintenance: As pointed out by appellant no longer is a wife entitled to alimony on the theory that it is a judgment for the damages sustained by her by reason of the loss of the right to her husband's support, *Nelson v. Nelson*, 282 Mo. 412, 221 S.W. 1066 (banc 1920), or as being in the nature of an award of damages because of her husband's breach of the marriage contract. *Brinker v. Brinker*, 360 Mo. 212, 227 S.W.2d 724 (1950). Marriage is now regarded as a partnership between equals. Either party upon dissolution of the marriage may be awarded maintenance, depending upon the circumstances, but a maintenance order in a proceeding for dissolution of marriage, where there are no children, is to be granted to an applying spouse ONLY upon a finding that the spouse seeking maintenance (1) lacks sufficient property, including the marital property apportioned to him, to provide for his reasonable needs, and (2) is unable to support himself through appropriate employment. § 452.335, par. 1(1), (2), RSMo 1969. Julia does not lack sufficient property to provide for her reasonable needs, in view of the award to her of the package liquor business in which she has had ten years' experience; the savings account of $4,000, and the order relieving her of the obligation to pay her attorney's fee. That she is able to support herself through other appropriate employment has been demonstrated by her record of working in various capacities prior to marriage, and by her own testimony that she is without physical, mental or emotional disabilities and is capable of working. By the terms of § 452.335 Julia is not entitled to an order of maintenance.

■ On the attorney's fee: Julia's counsel has been paid either $450 or $500 out of liquor store receipts. We find the court's allowance of an additional $650 reasonable under the circumstances, and sustain the court's action in awarding counsel that sum, to be paid by Ralph.

Wherefore, the judgment and decree is reversed and set aside, and the cause is remanded to the circuit court with directions to enter a new judgment and decree consistent with the views expressed in this opinion, directing the execution of all necessary documents and papers to effectuate these directions, after conducting the hearing referred to with respect to the furniture.

SMITH, C. J., and ALDEN A. STOCKARD, Special Judge, concur.