**Georgene LoPICCOLO,
Petitioner-Appellant,**

v.

**Vincent James LoPICCOLO, Respondent.**

**Nos. 37028, 37139.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Feb. 15, 1977.

Stephen M. Hereford, Gentry, Bryant & Hereford, St. Louis, for petitioner-appellant.

Hal B. Coleman, Clayton, for respondent.

DOWD, Judge.

Petitioner Georgene LoPiccolo appeals from those portions of the judgment of the Circuit Court entered in her cause for dissolution of marriage which pertain to an award of maintenance in gross and to the division of marital property. (No. 37028) Petitioner also appeals from the Circuit Court's denial of her motion for attorney's fees and costs incident to the appeal, and temporary maintenance pending appeal. (No. 37139)

■ In the interest of clarity, we set forth our standard of review. Rule 73.01 requires review of this court tried case upon both the law and the evidence, giving due regard to the trial court's ability to judge the credibility of witnesses. If we believe the trial court erred in its decree, we are obligated to enter the judgment that the trial court should have entered. The trial court's ruling will be sustained unless no substantial evidence supports it, the ruling is against the weight of the evidence, the decree erroneously declares the law, or the decree erroneously applies the law. *Blessing v. Blessing,* 539 S.W.2d 699, 702[1, 2] (Mo.App.1976); *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976).

■ Petitioner contends on appeal that the trial court erred in dividing the marital property because the court included a diamond bracelet as marital property. Petitioner argues that the bracelet was the property of her mother. The evidence regarding ownership of the diamond bracelet is in conflict. During her examination, petitioner testified that the bracelet belonged to her mother and that petitioner merely borrowed and wore the bracelet upon occasion. This statement was not refuted by respondent's testimony, but petitioner read

a note which she had written while seeking insurance coverage for the bracelet in which she stated, "This is my engagement ring and bracelet. Please put it on our insurance." Petitioner explained that the parties had insured her mother's bracelet because her mother did not have coverage. As the evidence concerning ownership of the bracelet is conflicting, we defer to the trial court and its opportunity to evaluate the credibility of the witnesses. *Conrad v. Bowers,* 533 S.W.2d 614, 619 (Mo.App.1975). Sufficient evidence was presented to sustain the trial court's finding that the bracelet was marital property under Section 452.-330 RSMo Supp.1973.[1]

Petitioner next contends that the trial court erred in awarding spousal maintenance in gross and in awarding an insufficient sum for maintenance. Under the trial court's decree, petitioner is to receive maintenance payments totalling $10,000 over a four year period. Petitioner is to receive $4,000 for the year ending March 13, 1976, $3,000 for the year ending March 13, 1977, $2,000 for the year ending March 13, 1978, and $1,000 for the year ending March 13, 1979. The parties do not contest the trial court's finding that the petitioner is entitled to some maintenance provision or the trial court's underlying finding that petitioner currently lacks sufficient property to provide for her reasonable needs and is unable to support herself through appropriate employment. § 452.335.1 RSMo Supp. 1973.

The parties do contest, however, the amount and duration of the maintenance order as governed by Section 452.335.2 RSMo Supp.1973. We conclude that the trial court erred in awarding "stair-step", terminable maintenance.

In determining whether the trial court's maintenance order is erroneous, we consider only the evidence presented at the hearing on the dissolution petition on February 13,

---

1. We note that, had the trial court found the bracelet to be the separate property of the wife, the trial court might still have included the value of the bracelet in its computations rela-

tive to the division of property. § 452.330.1 RSMo Supp.1973; *In re Marriage of Cain,* 536 S.W.2d 866, 872–75 (Mo.App.1976).

1975 and the provisions of the dissolution decree entered March 13, 1975. Petitioner was 38 years old at the time of the hearing. She was granted custody of 4 of the parties' minor children and was awarded $940 per month for the support of the children. Petitioner estimated that her expenses, excluding utility charges, totalled $600 per month, or $7200 per year. She owned no income producing property. Although petitioner had not worked during her 16 year marriage, petitioner had obtained employment after dissolution proceedings were begun. Petitioner testified concerning her employment as follows:

"Q: [by respondent's counsel]: You have a job at the present time?

A: I have a prospect of a position, but it's going to take me four or five years to build a following. Leppert-Ross, Frontenac Plaza.

Q: What is your position there? What will you be doing?

A: I will be selling clothes.

Q: When do you work there?

A: I'm not sure. I haven't made those plans completely. I went in Monday and worked for 9 hours.

Q: What were you paid?

A: I was working on commission, and I sold a hundred some odd dollars of clothes, and I think, I made four dollars. That's a little discouraging.

Q: Working on commission or salary?

A: No. It will be a commission draw, but if you don't make it, you have to put it back in, and I can't work full time.

Q: You haven't made those arrangements?

A: No. That's the first place I have looked.

\* \* \* \* \* \*

Q: [by petitioner's counsel]: Does this job show some promise?

A: It shows promise, but it will take anywhere from between five and six years from what I have been told by people. I will have to build up a following.

Q: What do you mean by a following?

A: When people will come in and ask for you. You build up a following and you get seven percent of what you sell.

\* \* \* \* \* \*

Q: Do you have any idea what you can make?

A: Yes.

MR. COLEMAN (Respondent's attorney): Objection, speculative what she will make.

\* \* \* \* \* \*

THE COURT: Sustained."

Petitioner also testified as to a possible restriction upon her ability to work:

"A: The only restriction I have, I have on the mental health, I cannot—I have never left my children. I have always been there when they come home from school. I cannot in a clear conscience, and to be truthful, I cannot leave my children when they are home from school, so it will have to be a very sparse time I work now until I feel my children are old enough to be on their own, and I have teenage children that come in there, and I do not want other children in my house unless I'm there."[2]

The property awarded petitioner in the dissolution decree included $14,000 in home furnishings, a $6,000 diamond bracelet, and a 1973 Ford Torino station wagon. Peti-

---

**2.** During the hearing on petitioner's motion for attorney's fees, costs of appeal, and temporary maintenance on May 6, 1975, petitioner testified that she was working 3 days per week at Leppert-Ross and was paid a salary of $92.50 every two weeks, plus commission from sales. She reiterated her reluctance to work full time or during the summer while her children were at home and unsupervised. She stated that her mother was too ill to babysit and that paid babysitters were too expensive. Petitioner's testimony is relevant only as it applies to her motion, and we have not considered this evidence in our analysis of the reasonableness of the maintenance order of March 13, 1975. However, had such evidence been before the trial court when it entered its decree, we do not believe that our decision would be different.

tioner was awarded a $5000 life insurance policy on respondent which had a cash surrender value of $1,300. The parties planned to sell the family residence.[3] Petitioner was awarded payment of $13,167.23 out of the *gross proceeds* from the sale of the residence as her share of the parties' liquid assets, which amounted to $37,734.46. In addition, petitioner was awarded a half interest in the *net proceeds* from the sale of the house.

Respondent was 40 years old at the time of the hearing on dissolution and claimed that a heart condition had forced him to reduce his work load as a pediatrician. At the time of the hearing in February, 1975, his gross salary from his medical corporation was $5,000 per month, and his net salary was $3450 per month. In 1974, respondent's income was $75,000.00. In addition to $2,605 in home furnishings, a $6000 Moran painting, and a 1972 Ford Convertible, respondent was awarded all of the parties' liquid assets which were valued at $37,-734.46. These assets included a $10,000 note from respondent's mother, respondent's vested interest in the pension plan from his medical corporation, respondent's interest in the assets of his medical corporation, money in a savings account, insurance policies, and securities worth approximately $10,254.46. Respondent was awarded half interest in the *net proceeds* from the sale of the family residence. The expenses of the sale, petitioner's $13,167.23 interest, and the first and second deeds of trust were to be deducted from the gross proceeds in order to reach the net proceeds from the sale. Respondent's monthly expenses totalled $1650 per month, or $19,800 per year. The trial court ordered respondent to pay petitioner's attorney's fees of $4000.

As our summary of the facts pertinent to the spousal maintenance order indicates, the trial court's order awarding petitioner $4000 as spousal maintenance for the year ending March 13, 1976 is supported by the evidence. The marital property has been roughly divided in half, petitioner awarded cash payments of $13,167.23 and her share of the net proceeds from the sale of the family residence. Petitioner earns very little from her part-time employment as a saleswoman,[4] certainly far less than required to meet her yearly expenses of at least $7200. Respondent's income of between $60,000 to $75,000 is adequate to allow respondent to meet his own needs while paying $4000 yearly maintenance. That portion of the trial court's decree ordering respondent to pay $4000 as spousal maintenance in 1976 is affirmed.

However, insofar as the decree lessens the amount awarded as spousal maintenance for the 3 subsequent years and terminates spousal maintenance in 1979, the trial court's decree is reversed. The trial court's order in this regard is not supported by any substantial evidence. The only evidence before the trial court which indicates that the financial circumstances of the parties might be different in future is the testimony given by petitioner that her job as a saleswoman "shows promise" if she "build[s] up a following" in a few years. No evidence was presented as to petitioner's income expectations should she actually acquire "a following". We do not believe that petitioner's statements constitute substantial evidence of petitioner's future ability to provide for her reasonable needs. The facts presented by the case at bar are similar to the facts in *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App.1975), and our decision is guided by the result in that case. If the evidence indicates that the dependent spouse's financial prospects will not improve dramatically in the future and that the means of the spouse providing maintenance are not likely to decrease in the future, the trial court abuses its discretion when it speculates that the original maintenance award will no longer be required in the future. *In re Marriage of Powers, su-*

---

3. The family residence was valued at approximately $100,000 and was subject to a $25,000 first deed of trust and a $15,000 second deed of trust.

4. At the time of the hearing, the petitioner had worked one day selling clothing on commission. She had sold about $100.00 of clothing and made $4.00.

pra at 955. Maintenance should not be prospectively decreased or terminated if there is no evidence or reasonable expectation that the circumstances of the parties will be markedly different in future.

The "earning capacity" of a spouse is an illusory financial resource if the evidence does not justify a conclusion that the spouse can realize such "earning capacity". *In re Marriage of Vanet,* 544 S.W.2d 236, 242–43[7] (Mo.App.1976). The court is not restricted to a consideration of present earnings and can consider prior earning capacity and *probable* future prospects, but the evidence must justify the inference that the spouse will realize such expectations. *In re Marriage of Vanet,* supra at 242–43[4, 7]. A future income source should not be considered if the amount of the future income is speculative. See *Butcher v. Butcher,* 544 S.W.2d 249, 253[3] (Mo.App.1976).

■ Because the trial court's order decreasing spousal maintenance during the period for which maintenance was provided and terminating such maintenance after 4 years was not based upon any substantial evidence, the order is erroneous and is reversed. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). After considering the law and the evidence pertinent to the question of spousal maintenance, we enter the order which should have been entered by the trial court. *Murray v. Murray,* 538 S.W.2d 587, 588 (Mo.App.1976). Spousal maintenance should be set at $4000 per year, payable on March thirteenth of each year, beginning for the year ending March 13, 1976. Maintenance shall not be decreased in subsequent years nor shall maintenance be terminated in 1979, absent a proceeding for modification pursuant to Section 452.370, RSMo Supp.1973.

■ Petitioner's third contention is that the court erred in denying her motion for attorney's fees, costs on appeal, and temporary maintenance pending appeal. As the argument portion of petitioner's brief did not develop her contention concerning temporary maintenance pending appeal, we deem such contention abandoned. *State v. Schulten,* 529 S.W.2d 432[4] (Mo.App.1975); *Bopp v. Spainhower,* 519 S.W.2d 281, 286 (Mo. banc 1975). Petitioner is mistaken in her belief that all issues involving temporary maintenance were resolved in Point II of her brief. The alleged argument regarding periodic maintenance found in Point II is separate and distinct from an argument regarding maintenance on appeal.

■ However, we do reach the merits of petitioner's contentions concerning attorney's fees and costs of appeal. The trial court erred in denying the motion for attorney's fees and costs of appeal because the appeal is not clearly without merit and the transcript indicates that, as between the two parties, the respondent can better afford to bear the extraordinary expenses of the appeal. *In re Marriage of Leonard,* 538 S.W.2d 736, 737 (Mo.App.1976). Though petitioner is not destitute, she should not be required to strip herself of all property to prosecute an appeal. *In re Marriage of Leonard, supra,* especially when respondent is financially able to pay the fees and costs and payment would put a financial burden on petitioner. *Hill v. Hill,* 456 S.W.2d 591, 593 (Mo.App.1970); *Matthews v. Matthews,* 337 S.W.2d 529, 536 (Mo.App.1960). Therefore, we reverse the order of the Circuit Court denying petitioner's motion for attorney's fees and costs on appeal, and we remand to that Court for an order awarding petitioner $300 for costs of appeal and $1,500 as attorney's fees.

The trial court's order decreasing spousal maintenance in years after 1976 and terminating spousal maintenance in 1979 is reversed and remanded. The trial court's order denying petitioner's motion for attorney's fees and costs on appeal is also reversed and remanded. The trial court is ordered to enter its order and decree consistent with this opinion. Spousal maintenance should be set at $4000 per year, and petitioner should be granted $300 for costs of appeal and $1500 as attorney's fees.

CLEMENS, P. J., and WEIER, J., concur.