Irwin A. BRUEGGEMANN,
Petitioner-Respondent,

v.

Erma Glen BRUEGGEMANN,
Respondent-Appellant.

No. 36374.

Missouri Court of Appeals,
St. Louis District,
En Banc.

April 5, 1977.

Motion for Rehearing or Transfer
Denied June 9, 1977.

Application to Transfer Denied
July 11, 1977.

Robert E. Morley, O'Fallon, for respondent-appellant.

Hanks, Taylor & Suddarth, W. Morris Taylor, Clayton, for petitioner-respondent.

McMILLIAN, Judge.

The opinion of April 6, 1976, handed down in this case has been withdrawn since the court en banc sustained the motion for rehearing and the cause was reargued and resubmitted on June 11, 1976, before an expanded panel of the court.

Erma Brueggemann appeals certain provisions of a decree of dissolution entered under the New Dissolution of Marriage Act.[1] Neither party contends the marriage was other than irretrievably broken nor challenges those portions of the decree relating to child custody, visitation and division of the marital property. Appellant, however, asserts that the court erred in (1) finding that she had sufficient property to provide for her reasonable needs, was able to support herself by appropriate employment and was, therefore, not entitled to an award of maintenance; (2) granting $150 per month as child support which award she contends was inadequate; and (3) failing to award the full amount of her claimed attorney's fees.

1. Section 452.300 through 452.415, Ch. 452, RSMo 1969 as amended, Laws 1973, V.A.M.S., effective January 1, 1974.

At dissolution of this 31-year marriage, the court granted appellant custody of one minor child born November 11, 1960, and $150 per month for child support. By division of the marital property, appellant received the marital home valued at $20,000 to $25,000; a $1,000 life insurance policy with a cash value of $325; two cemetery lots valued at $1190 subject to a $325 debt; checking and savings accounts of about $700; a 1973 Buick subject to debt of approximately $2700, and all of the household furnishings remaining in the home. Respondent received sole possession of a car valued at $2500; life insurance policies with a cash value of $3,000; his checking and savings accounts amounting to approximately $1,000 to $1,400 and the sole right to his retirement annuity fund available at the age of 68 which, at the time of trial, had a balance of more than $19,000. Respondent was ordered to pay off the house mortgage indebtedness of $3,400.

The trial court found an award of maintenance to be unjustified, noting that:

". . . the court further finds that having heard evidence presented by both parties concerning the conduct of each party to this proceeding that there was not sufficient evidence to justify any preference to one party or the other party relating to the division of personal property, or to justify a period of temporary support in the form of maintenance to either party, each party having given the other sufficient indignities to cause a dissolution of the marriage; the court further finds that both Petitioner and Respondent are well and of good health and able to work and in fact, that both Petitioner and Respondent are employed full time at present. . . ."

At the time of the trial, both parties were in their early fifties. Three children had been born of the marriage. Only one child remained unemancipated, a son born November 11, 1960. For most of the 31 years of the marriage, the wife had stayed at home to supervise the children. Approximately six years before the dissolution, the wife became employed as an insurance clerk at a savings and loan institution. The ostensible motivation for obtaining this employment was to "help with the children's college expenses." As a result of surgery in the year before the dissolution, appellant missed two and a half to three month's work but has missed very little time since returning to work. She experiences some high blood pressure which is controlled by medication. Every two weeks appellant receives gross pay of $250.17 and net take-home pay of $189.94. Her income statement filed with the trial court stated approximately $5600 as net income for 1973. She participates in a thrift savings plan to which both she and her employer contribute. The wife estimated that over $300 had accumulated in this fund.

The husband had been employed for approximately 27 years at St. Louis University. At the time of trial, he directed the school of radiology of the orthodontic section of the university. Including a raise received just prior to the trial, the husband earned for these services gross pay of $1333.31 per month and net pay after deductions of $861.00 per month. For some years, he had supplemented this income with fees received for consultation on radiology techniques. The pre-tax income from this consultation practice was approximately $3000 per year. The husband testified, however, that this additional income would "decrease considerably" due to the university's acquisition of new laminographic equipment. The husband participated in a pension plan at the university. At the time of trial, the husband's interest in the plan was valued at approximately $19,000. He testified that no money could be received under the plan until he became 68 years old in 1988.

Both parties filed expense statements in the trial court. The wife claimed expenses of $10,325 per year for herself and the minor child. The husband claimed that his expenses totalled approximately $8600 per year.

The remainder of the testimony at trial consisted of charges and countercharges of misconduct. We do not recount this testi-

mony because we agree with the trial court that the testimony does not justify any preference for either party in terms of the provisions of the dissolution decree.

■ Our review in this court-tried case is circumscribed by the principle that:

". . . the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law."

*Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). Under that standard, we affirm the actions of the trial judge in this close case. However, in light of the procedural course of this case and the current dearth of judicial interpretations of the still new dissolution act, we take this opportunity to briefly analyze the portions of that act involved in the present case.

*Maintenance*—Section 452.335 [2] now controls questions of maintenance in dissolution proceedings. By the statute the trial court is directed to make provision for the reasonable needs of the spouse seeking maintenance. Subsection 1 of the statute indicates that, if possible, such reasonable needs are to be met by the income of the spouse seeking maintenance and the trial court's division of property. Where the combination of these two financial sources is inadequate to provide for the reasonable needs of the spouse seeking maintenance, an award of maintenance may be made to raise the spouse's financial status to the reasonable needs level. The amount and duration of any such award are determined in light of the non-exclusive factors listed in subsection 2 of the statute.

To logically proceed under the statute, the trial judge must make a threshold determination of the reasonable needs of the spouse seeking maintenance. Only then can the judge know whether any maintenance is necessary. The difficulty is that the statute seemingly offers no guidance to the trial judge in making this determination. In our opinion, the term "reasonable needs" must be defined in terms of the policies embodied in the new dissolution law.

■ Section 452.335 of the Act signals marked departures from the prior law. Maintenance may be granted either spouse as contrasted with the traditional "alimony-for-the-wife only" concept. Factors relating to fault during the marriage are eliminated, except for consideration of the conduct of the party seeking maintenance, evincing a legislative intent to remove any punitive quality as to the party providing maintenance. Specification in the statute

---

**2.** Section 452.335 Maintenance order

"1. In a proceeding for nonretroactive invalidity, dissolution of marriage or legal separation, or a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order to either spouse, but only if it finds that the spouse seeking maintenance

(1) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and

(2) Is unable to support himself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

"2. The maintenance order shall be in such amounts and for such periods of time as the court deems just, and after considering all relevant factors including:

(1) The financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

(2) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, and the physical and emotional condition of the spouse seeking maintenance;

(6) The ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; and

(7) The conduct of a party seeking maintenance during the marriage. Laws 1973, p. 470, § 8, effective Jan. 1, 1974."

of the earning capacity of the spouse seeking maintenance and the division of property as the principal means of provision for the reasonable needs of the spouse seem to reflect a legislative intent to avoid, if possible, the imposition of continuing financial obligations to the spouse seeking maintenance. There is a new emphasis on the self-sufficiency of both parties following the dissolution, *see In re Marriage of Neubern*, 535 S.W.2d 499, 503 (Mo.App.1976).

The emphasis on self-sufficiency does not, however, require us to totally ignore the fact that a marriage did exist. In many marriages by tacit or express agreement, the wife remains at home and cares for the children and foregoes her opportunity to develop a career or acquire job experience. Where such a spouse has been out of the job market for extended periods, an independent determination of her appropriate lifestyle and earning capacities may be difficult or impossible. In such a case it may be proper for the court to place greater emphasis on the lifestyle enjoyed during the marriage, the duration of the marriage and other traditional factors. At least two of the factors enumerated in subsection two of the statute direct the court to consider the circumstances of the marriage in computing any maintenance award necessary to raise the spouse's financial status to the reasonable needs level. Consideration of the duration of the marriage, § 452.335, subd. 2(1)–(4) and the standard of living established during the marriage, § 452.335, subd. 2(1)–(3) recognizes that the earning capacity of either spouse is properly considered as a partnership asset.

■ We are not suggesting a mechanical approach by which the standard of living of the parties is determined and then divided by two. Such an approach would produce results contrary to the results in other Missouri cases, e. g., *Nixon v. Nixon*, 525

S.W.2d 835 (Mo.App.1975); *Cain v. Cain*, 536 S.W.2d 866 (Mo.App.1976). Unlike in pre-dissolution cases, where alimony was awarded to " '. . . enable her [the wife] to live according to the station in life which she enjoyed when the decree of divorce was granted . . .' " *Shilkett v. Shilkett*, 285 S.W.2d 67, 71 (Mo.App.1955) and *Reeves v. Reeves*, 399 S.W.2d 641, 650 (Mo.App.1966), "reasonable needs" as used in the statute does not automatically equal the standard of living established during the marriage, *cf. Butcher v. Butcher*, 544 S.W.2d 249, 254 (Mo.App.1976). Reasonable needs as used in the statute is a relative term. In a marriage of lengthy duration where one spouse has foregone career development, the marital standard of living may serve as an important guide in computing the spouse's reasonable needs.[3] In a very practical sense it is frequently the best evidence of what the parties have together determined their "reasonable needs" to be.

■ Section 452.335 specifically directs the trial court to attempt to satisfy this goal of provision for the reasonable needs of the spouse seeking maintenance by a consideration of the earning capacity of the spouse seeking maintenance and the division of property. Under the Missouri statute and the Uniform Marriage and Divorce Act upon which it is based, the division of property is emphasized as "the primary means of providing for the future financial needs of the spouses," Uniform Laws Annotated, Vol. 9 at 457 (1973). In terms of an award of property replacing an award of maintenance, however, the focus of our statute seems more specifically on income-producing property, *see Nixon v. Nixon*, 525 S.W.2d 835, 838 (Mo.App.1975). None of the property set off to the wife in the present case could readily be characterized as income-producing *cf., In re Marriage of Neubern*, supra (no award of maintenance;

3. In the only discovered cases in other jurisdictions dealing with whether to make an award of maintenance under a statute almost identical to Missouri's, the courts identified the marital standard of living as a principal factor in measuring "reasonable needs." *Sharp v. Sharp*, 516 S.W.2d 875, 877 (Ky.1974); *Casper v. Casper*, 510 S.W.2d 253, 255 (Ky.1974). The jurisdictions with statutes comparable to Missouri's, based on the Uniform Marriage and Divorce Act are Arizona, § 25–319, Colorado, § 14–10–114, Kentucky, § 403.200 and Montana, § 48–322.

wife awarded couple's liquor store business). Any property awarded to a respective spouse, pursuant to § 452.330, V.A.M.S., of course, would affect that spouse's ability to provide for his reasonable needs in the sense of obviating any need to acquire a substitute. For example, the wife in the present case was awarded the previously shared residence of the parties and all household furnishings. In addition, the division of property might necessitate a recomputation of the expenses claimed by each spouse in their income and expense statements which are filed in the trial court before the trial commences.

■ Under subsection 1 of the statute, even if there is insufficient property to satisfy reasonable needs, an award of maintenance can still be denied if the spouse seeking maintenance can support himself or herself through "appropriate employment." "Appropriate employment" is undefined in the statute or in any Missouri case. The comments to Section 308 of the Uniform Marriage and Divorce Act suggests that the employment should be "appropriate to his or her skills and interests," Uniform Laws Annotated, Vol. 9 at 494 (1973). We think that this emphasis on an affirmative obligation on the part of the spouse seeking maintenance to seek employment reflects one of the most important changes brought about by the dissolution law, see Ruhland, Dissolution of Marriage under Missouri's New Divorce Law: Maintenance and Support, 29 Jrnl.Mo.Bar 516 (1973).

This new emphasis has been reflected in our court's approval of awards of rehabilitative maintenance, e. g., Nixon v. Nixon, supra. In the present case, the "appropriateness" of the wife's employment was not contested by the husband. We assume that the trial judge concluded that an award of rehabilitative maintenance, that is, a temporary provision for maintenance until such time as the spouse acquires additional training, was inappropriate in light of the age of the wife and her previous employment history.

■ When we apply the foregoing analysis to the facts of the present case, we are convinced that the trial judge properly denied any award of maintenance. Based on the income and expense statements filed in the trial court, the wife had regular income in 1973 of approximately $5600 and claimed yearly expenses for herself and her child of $10,300. Solely for the purposes of analysis, we will assume that these incomes and expense statements represent the reasonable needs of the parties. Of the wife's claimed expenses, $114 per month was attributable to "rent or mortgage or agreement of sale, including monthly pro rata of property taxes, insurance, etc. . . ." By the trial court's order, the husband was charged with responsibility for the house payments. The wife's claimed house expenses should then decline to some extent. In addition, the wife's "income" was increased by the trial court's order that the husband pay $150 per month for child support. The gap between the wife's claimed expense and her available income is thus further decreased. If we eliminate the $114 per month house expense and add in the $150 per month child support, the wife's claimed expenses total approximately $8900 per year as contrasted with income of approximately $7400 per year.

Balanced against the wife's expenses, the husband's income and expense statement asserts expenses of approximately $8600 per year. To this amount should be added the $1800 per year to be paid as child support. The result is claimed expense to the husband of $10,400 per year. The income of the husband is somewhat uncertain. Including a raise received just prior to trial, the husband's net income derived from his teaching job at St. Louis University was approximately $10,300 per year. For a few years prior to the trial, the husband had also received a pre-tax income of approximately $3,000 per year from a consultation service. At trial, the husband testified without objection or rebuttal that this consultation income would "decrease considerably" in the immediate future due to the university's acquisition of its own laminographic equipment. Omitting the consultation income, the husband's claim expenses

equal or exceed his income. The statute expressly directs the trial court to consider "[t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance", Section 452.335, subd. 2(2)–(6). We recognize that after a dissolution, the claimed needs of the parties may need an adjustment. At the same time, we believe that the trial judge attempted to adjust the needs of the parties in terms of the division of property. The wife was allotted the family home free of debt and a substantial portion of the family property. As we have noted, at least this property obviated the necessity of acquiring a substitute. Conversely, the husband must now bear the expense of providing alternative accommodations.

The trial court was confronted with the situation of a couple of only moderate means. We believe that the trial judge ably and carefully drafted an order tailored to the unique circumstances of this case as the facts existed at the time of trial. From our limited appellate perspective we cannot condemn the trial judge's actions.

■ Appellant's second claim of error is that the court should have awarded an amount greater than $150 per month for the support of the remaining minor child of the marriage. She contends the only evidence presented to the court showed a need for $183 per month for support of the child. Section 452.340 provides, in part, that, ". . . the court may order *either or both parents owing a duty of support* to a child of the marriage to pay an amount reasonable or necessary for his support . . . after considering all relevant factors in including: (1) *The father's primary responsibility for support of his child*; (2) The financial resources of the child; (3) *The financial resources of the custodial parent*; (4) The standard of living the child would have enjoyed had the marriage not been dissolved; (5) The physical and emotional condition of the child, and his educational needs; and (6) The financial resources and needs of tne noncustodial parent." (Emphasis added.) It is apparent under the Act that while support of the minor children remains *primarily* the obligation of the father, the mother may also be called upon to provide support where she has the ability to do so. We have long held that the award of child support is a matter properly within the sound discretion of the trial court. *Larison v. Larison*, 524 S.W.2d 159, 161 (Mo. App.1975); *S___ v. S___*, 514 S.W.2d 1, 8 (Mo.App.1974); *Fugate v. Fugate*, 510 S.W.2d 705, 706 (Mo.App.1974). And subject to consideration of all relevant factors including those catalogued in § 452.340, this rule adheres today.

■ Here we cannot say the award of $150 per month for child support was an abuse of discretion, in view of the mother's present financial status, since the father was required to deed the marital home to the custodial mother, free of mortgage, together with other marital property.

■ Finally, appellant complains of the court's failure to award the full attorney's fees requested. Section 452.355 of the Act provides: "The court from time to time after considering all relevant factors including the financial resources of both parties may order a party to pay a *reasonable amount* for the cost to the other party of maintaining or defending any proceeding under sections 452.300 to 452.415 and for attorney's fees . . . ." (Emphasis added.) Appellant was awarded $1,000 in attorney's fees, as against a claimed need of approximately $1600. By its terms, the statute does not entitle a party to full costs and attorney's fees, but to reasonable amounts considering the relative financial condition of both parties. Such an award is in the discretion of the trial court and we review only for abuse of discretion. *Specking v. Specking*, 528 S.W.2d 448, 452 (Mo. App.1975); *S.G.E. v. R.L.J.*, 527 S.W.2d 698, 703 (Mo.App.1975) (citing cases); *Nelson v. Nelson*, 516 S.W.2d 574, 581 (Mo.App.1974). Under the evidence we find no abuse of discretion in the award of attorney's fees.

The judgment of the trial court is affirmed.

SMITH, CLEMENS, KELLY, WEIER, STEWART and RENDLEN, JJ., concur.