**Rufus P. LANG, Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 39468.**

Missouri Court of Appeals,
St. Louis District,
Division One.

July 18, 1978.

**C. B. H., Petitioner-Respondent,**

v.

**R. N. H., Respondent-Appellant.**

**No. 38616.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

July 25, 1978.

Motion for Rehearing and/or Transfer
Denied Sept. 15, 1978.

Hal B. Coleman, Coleman, Ross, Carey, Goetz & Schaaf, Inc., Clayton, for respondent-appellant.

Steven H. Ringkamp, James Hullverson, Hullverson, Hullverson & Frank, Inc., St. Louis, for petitioner-respondent.

SNYDER, Judge.

R. N. H. appeals from a decree of dissolution of his marriage to C. B. H. The parties were married in 1954. They have two children, R., Jr., age 19, and K., age 16 at the time of the trial. After nearly twenty-one years of marriage, the wife, C. B. H., filed a petition for dissolution, alleging the marriage was irretrievably broken, which the husband, R. N. H., denied under oath. The trial court made a finding of irretrievable breakdown and awarded maintenance, child support and attorneys' fees to the wife.

The husband raises four issues on appeal claiming that: (1) the court's finding that the marriage was irretrievably broken is not supported by substantial evidence and is against the weight of the evidence; (2) the court erred in its award of maintenance; (3) the court erred in finding the residence of the parties to be marital property and in awarding certain household items to the wife; and (4) the court erred in awarding attorneys' fees to the wife. These points are ruled in favor of the wife and the judgment is affirmed.

The trial court very briefly heard evidence on May 6, 1976. The wife testified the marriage was irretrievably broken; the husband testified it was not. Under the authority of § 452.320.2[1] the court continued the case for 60 days to allow the parties to seek counseling.

When the hearing resumed on July 15, 1976, the wife again testified that the mar-

---

1. All statutory references are to RSMo 1969, Cumulative Supplement 1975.

riage was irretrievably broken. Asked on direct examination whether it was her husband's objectionable behavior that led her to that conclusion, she answered without objection that it was. She testified she felt the marriage had never been a partnership, that her husband ran everything and controlled all the money, that there was no communication between them and that her husband had rejected her sexually for the last three years. He refused to discuss these and other problems with her or to seek counseling. She said the strain and tension had disturbed the children and the marriage's general deterioration had left her with feelings of rejection and mental anguish. In sum, she felt all the love had gone out of the marriage.

The husband testified that he had stood by his wife when she had experienced problems with drugs and alcohol, and believed they could weather this problem as well. The marriage, in his opinion, was not irretrievably broken; he loved his wife and attributed her desire for dissolution to "another mood" she was going through. He believed the marriage could be saved through counseling.

On August 25, 1976, the trial court entered its judgment granting a decree of dissolution. The court determined "as a matter of fact that the marriage is irretrievably broken." In accord with the children's expressed preferences to the judge without the presence of the parties, custody of R., Jr. was granted to the husband and custody of K. to the wife. The court awarded $496,115.14 in separate property to the husband and $23,746 in separate property to the wife. The family home, with a stipulated value of $75,000, and $17,000 in other assets were found to be marital property. The wife was awarded the home; the husband the remainder of the marital property. Each party was awarded household personal property and an automobile. The wife was awarded maintenance of $1,500 per month and child support of $300 per month. The husband was ordered to pay $4,900 in attorneys' fees for his wife. Costs were also assessed against him.

■ Appellate review of a court tried case is governed by Rule 73.01 and the case of *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). *Brueggemann v. Brueggemann*, 551 S.W.2d 853 (Mo.App.1977). The judgment or decree of the trial court must be affirmed "unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law" and "[a]ppellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong." *Murphy*, page 32[1, 3].

I. *The Trial Court's Finding of Irretrievable Breakdown*

The husband urges that the judgment on this point is without substantial evidence and is against the weight of the evidence.

■ When the respondent in a dissolution action has denied under oath that the marriage is irretrievably broken, the petitioner must satisfy the court of one or more of the five facts or conditions set out in § 452.320.2 [2] in order for the court to find

---

2. Section 452.320.2 reads as follows:
   2. If one of the parties has denied under oath or affirmation that the marriage is irretrievably broken, the court shall consider all relevant factors, including the circumstances that gave rise to the filing of the petition and the prospect of reconciliation, and after hearing the evidence shall
   (1) Make a finding whether or not the marriage is irretrievably broken, and in order for the court to find that the marriage is irretrievably broken, the petitioner shall satisfy the court of one or more of the following facts:

   (a) That the respondent has committed adultery and the petitioner finds it intolerable to live with the respondent;

   (b) That the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent;

   (c) That the respondent has abandoned the petitioner for a continuous period of at least six months preceding the presentation of the petition;

   (d) That the parties to the marriage have lived separate and apart by mutual consent for

irretrievable breakdown. *In re Marriage of Uhls*, 549 S.W.2d 107 (Mo.App.1977); *In re Marriage of Mitchell*, 545 S.W.2d 313 (Mo. App.1976).

■ From the testimony it is evident the wife was attempting to satisfy the court "[t]hat the respondent has behaved in such a way that the petitioner cannot reasonably be expected to live with the respondent." § 452.320.2(1)(b). There was substantial evidence of such behavior on the husband's part.

The evidence detailed earlier of the husband's domination, financial differences, sexual rejection of his wife, breakdown of communications, the husband's refusal to agree to counseling when it might still have been beneficial, and his saying that he was "sick and tired of everything and wanted a divorce," constituted behavior on his part which justified a finding that the wife could not reasonably be expected to live with him.

The husband cites *In re Marriage of Mitchell, supra,* and argues that in this case, as in *Mitchell,* it is the conduct of the wife-petitioner and not the husband-respondent, which made it unreasonable to expect one party to live with the other. But this case is distinguishable from *Mitchell.* In *Mitchell* there was no evidence of objectionable behavior on the part of the respondent. Here there was substantial evidence. The behavior upon which the finding of irretrievable breakdown was made was that of the husband during the four years immediately preceding the filing of the petition.

The husband, in contrast, emphasizes his wife's past drug and alcohol problems to support his argument that her conduct is at fault, forgetting, apparently, that her drug problem was resolved twelve years, and her alcohol problem five years, before the trial.

The husband's argument that his wife was using her own acts of misconduct to justify or warrant the court's finding of irretrievable breakdown is rejected.

■ The husband claims error because the wife failed to amend her petition to allege details of his complained of behavior as grounds for the irretrievable breakdown of the marriage and the granting of the decree of dissolution. The point is not well taken.

Under our procedure, issues not raised in the pleadings may be tried by consent of the parties and where so tried, they are treated as if they had been pleaded. Amendment of the pleadings, even though not formally requested, is presumed and will not affect the trial of the issues. Rule 55.33; *Murphy v. Murphy, supra* at 952[2].

*In re Marriage of Uhls, supra,* page 110[6, 8].

Not only did the husband fail to object to the wife's testimony on this issue, he then went forward and introduced evidence favorable to his position. The issue raised under § 452.320.2(1)(b) was tried by the consent of the parties and is ruled against the husband.

## II. *The Maintenance Award*

The husband argues: (1) maintenance should not have been granted because his wife's need for maintenance was not shown; (2) the award was excessive; and (3) the court erred in failing to set a fixed duration of time for the payment of maintenance.

■ The first argument is based on the wife's failure to offer into evidence the cost of living and expense sheet on which her request for maintenance of $2,224 a month was based. The husband contends that without the admission of this document, there can be no substantial evidence to support the $1,500 a month maintenance award.

The record shows that the wife's expense list was marked as Exhibit No. 1. She

a continuous period of twelve months immediately preceding the filing of the petition;

(e) That the parties to the marriage have lived separate and apart for a continuous peri-

od of at least twenty-four months preceding the filing of the petition; or

. . . . .

testified at length on its contents. It was not, however, offered into evidence. In spite of this, the wife requests that it be considered. In support of her request, the wife has cited cases involving documents which were admitted into evidence but then were either lost or not included in the record on appeal. These cases are not in point because here the expense list was never received in evidence and the presumption indulged in the cited cases, that the evidence was favorable to the judgment, does not arise. Her expense list cannot be considered. Even so, the award is supported by substantial evidence.

The list contained categories for taxes, utilities, auto, home, cleaning lady, food, dairy, insurance, personal, charity, travel, vacation and clothing. It was prepared from the couple's 1974 and 1975 income tax returns and from the husband's costs of living sheets for 1974 and 1975. From it, the wife calculated her monthly expenses at $2,224.

As part of his case, the husband introduced his 1974 expense sheets. They also contained detailed breakdowns of family expenditures for taxes, utilities, auto, home, cleaning lady, food, dairy, insurance, charity, travel, vacation and clothing, the same items testified to by the wife from her expense list. In fact, she obtained her figures from her husband's expense sheets. The evidence of those figures is before the court.

Despite the husband's claim that it is impossible to separate the wife's expenses from the family expense sheets, many of the expenses will be substantially the same for the wife as for the entire family. Other expenses were broken down as to allow clear identification of their source. The court knew the amount per month the wife claimed to need and it had detailed evidence of the amounts spent on her living expenses in the recent past. Substantial evidence of the wife's needs was before the court.

The husband says an examination of all of the factors listed in § 452.335.2 proves the $1,500 a month award to be excessive. Our standard of review is whether the trial court has abused its considerable discretion in the granting of maintenance. *Jaeger v. Jaeger,* 547 S.W.2d 207 (Mo.App.1977). We do not interfere unless an abuse of that discretion has been shown by the appellant. *In re Marriage of Galloway,* 547 S.W.2d 193 (Mo.App.1977); *Suesserman v. Suesserman,* 539 S.W.2d 741 (Mo.App.1976). " 'An abuse of discretion is an erroneous finding and judgment which is clearly contrary to the facts or the logical deductions from the facts and circumstances before the court—a judicial act which is untenable and clearly against reason and which works an injustice.' *State v. Stubenrouch,* 499 S.W.2d 824, 826 (Mo.App.1973)." *State v. Letourneau,* 515 S.W.2d 838, 844[6] (Mo.App.1974). *Beckman v. Beckman,* 545 S.W.2d 300, 301[1] (Mo.App.1976).

Section 452.335.2 sets out a list of factors for the court's consideration in setting the amount and duration of maintenance. An examination of these factors and the applicable evidence shows the court did not abuse its discretion in setting maintenance at $1,500 a month.

The wife's financial resources are not great. Of the $23,746 in separate property awarded her, $10,366 is the cash value of a life insurance policy owned by her on the husband's life. The remainder is in coins and foreign currency. By her undisputed testimony the wife was holding these for her mother at the request of her father who is deceased. She was awarded a car and the family residence free of encumbrances, but the former is an expense as well as an asset and the latter is necessary to provide a home for the minor child entrusted to her custody. The household items awarded her are necessary furnishings for the home. She has no cash for current living expenses.

The wife was 44 at the time of this proceeding. Her physical and emotional health were good. Aside from volunteer work, she stayed at home, supervised the house and raised the children during the 21 years of the marriage. She has been out of the job market for many years. According to the testimony of a personnel agency of-

fice manager, the wife would need a year to acquire the secretarial skills necessary to find employment.

The standard of living enjoyed by these parties during the 21 years of their marriage was, by their own admission, quite high. Whether it was extravagant in light of their income and social status is debatable and involves highly personal standards.

The husband's gross income for the years 1970 through 1974 varied between a low of $76,312 (1972) and a high of $80,586 (1974). The court awarded him $455,682.87 in stock as his separate property and $17,832 in marital property (stock, pension plan, bank accounts). He was also awarded household furnishings and personal items. He received custody of R., Jr., now age 21. Taking his income, his assets and his expenses together, the husband should be able to meet both his wife's and his own needs.

The husband asserts that his wife's conduct was such that it would necessarily prohibit her from an allowance of any substantial award of maintenance. The only misconduct alleged is the wife's drug and alcohol use. However, she successfully overcame these problems some years ago. There is no evidence of misconduct on her part during the four years immediately preceding the filing of the dissolution petition which could be considered in determining the amount of a maintenance award. There is no basis for denying her maintenance as a punishment. *In re Marriage of Carmack*, 550 S.W.2d 815 (Mo.App.1977).

The trial court's concern in making a maintenance award is the reasonable needs of the spouse seeking maintenance. *Brueggemann, supra,* page 857. Considering all the factors outlined in § 452.335.2 the trial court did not abuse its discretion in making this award. The parties' standard of living, the husband's assets and income, the duration of the marriage and the wife's minimal earning power and assets all support the award. The standard of living enjoyed during the marriage was properly given emphasis. *Brueggemann,* supra, *page 857.*

The husband also argues that the trial court erred in failing to set a fixed duration of time for the payment of maintenance which he states is required by the statute. He cites no cases to support his assertion that § 452.335 requires the court to set a termination date for the maintenance payments. In fact, this court has taken an unfavorable view toward prospective termination in the absence of evidence that the circumstances of the parties are likely to change in the future. *In re Marriage of Powers*, 527 S.W.2d 949 (Mo.App. 1975); *In re Marriage of Valleroy*, 548 S.W.2d 857 (Mo.App.1977); *LoPiccolo v. LoPiccolo,* 547 S.W.2d 501 (Mo.App.1977). There was no such evidence here. Prospective termination would have been highly speculative and an abuse of discretion. *Valleroy, supra* ; *LoPiccolo, supra.* If circumstances in fact do change in the future, the husband may file a motion to modify.

### III. *Division of Marital Property*

The husband claims that the trial court erred in determining that the family home was marital property. The house was purchased in 1960 for $42,500, six years *after* the parties were married. The house was titled in the husband's name alone. A mortgage of $28,000 was taken at purchase. Payments on the mortgage apparently were made during coverture and the outstanding balance of $24,000 was paid off in 1964 or 1965 by the husband's mother.

"Marital property" is defined in § 452.-330.2 as "all property acquired by either spouse subsequent to the marriage . . . ." The statute then lists exceptions to this definition. The husband contends he used the proceeds of the sale of stock he owned prior to the marriage for the purchase of the house. Therefore, he says, the house is separate property because it falls under § 452.330.2(2) which excepts property acquired subsequent to the marriage if it was "acquired in exchange for property acquired prior to the marriage."

Section 452.330.3 creates a presumption that all property acquired subsequent to the marriage is marital property regardless of

the status of title to the property. The presumption applies here but may be overcome by a showing that the property was acquired by a method listed in § 452.330.2. The burden of proving that the property comes under one of the exceptions falls on the party attacking the presumption. *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App. 1975); *Jaeger, supra,* page 210.

The husband has not cited any transcript reference to support his briefed position that the funds for the purchase of the house came from the sale of stocks he had purchased before the marriage. There was no evidence as to the exact source of the money used for the down payment. Therefore, the husband has failed his burden of proof and has not overcome the presumption embodied in § 452.330.3. The trial court properly found the residence to be marital property.

The husband also disputes the award of two items of personal property to the wife, a portable Sony radio and a silver and crystal candelabra with matching epergne. The record supports the award of these items to the wife. Therefore, the trial court's ruling as to these relatively minor items is affirmed.

### IV. *Attorneys' Fees*

■ Finally, the husband complains the trial court erred in granting the wife $4,900 in attorneys' fees. There is no dispute as to the reasonableness of the fees.

"The governing rule is that the allowance of attorneys' fees to a wife is discretionary with the trial court and is to be exercised in view of the circumstances of both parties, including the ability of the husband to pay. (cites omitted)." *S.G.E. v. R.L.J.,* 527 S.W.2d 698, 703[6] (Mo.App.1975). An appellate court may interfere only if there has been an abuse of discretion. *Brueggemann, supra.*

Considering the size of the fees, the wife's lack of liquid assets (the $13,380 separate property awarded to her is held by her for her mother), the husband's income and assets and the disparity in the parties' means to pay, there was no abuse of discretion. *Ortmann v. Ortmann,* 547 S.W.2d 226, 231[8, 9] (Mo.App.1977).

The judgment is affirmed in all respects.

DOWD, P. J., and ALDEN A. STOCKARD, Special Judge, concur.