Virginia F. BUTCHER,
Petitioner-Respondent,

v.

Robert W. BUTCHER,
Respondent-Appellant.

No. KCD27426.

Missouri Court of Appeals,
Kansas City District.

Oct. 12, 1976.

Motion for Rehearing and/or Transfer
Denied Nov. 4, 1976.

Application to Transfer Denied
Jan. 10, 1977.

Lewis A. Dysart, David B. Dysart, Kansas City, for respondent-appellant.

Allan R. Browne, Kansas City, for petitioner-respondent.

Before DIXON, P. J., and SWOFFORD and WASSERSTROM, JJ.

DIXON, Presiding Judge.

Petitioner, Virginia Butcher, filed suit for dissolution of her 1949 marriage to the respondent, Robert W. Butcher. The court decreed the dissolution, granted the wife care and custody of a minor child, ordered child support of $400 per month and divided the property determined to be marital property, granted the wife maintenance of $1,000 per month and additional attorney fees of $7,710. The husband has filed an appeal challenging the division of marital property, the award of maintenance, the award of child support, and the attorney fees as well as one item of trial evidence.

This hotly disputed proceeding generated over 700 pages of transcript and the memorandum opinion and decree of the trial court covers thirty transcript pages. To summarize the evidence produced in any detail is unnecessary. A summary statement of the facts sufficient to provide a background for the discussion of the issues actually raised will be sufficient with additional reference to the specific facts in connection with the points raised.

Robert Butcher and Virginia Butcher were married in 1949 immediately prior to his admission to medical school and following their joint graduation from the University of Missouri. At trial, the parties were 48 years of age. There were two children born of the marriage, a 24-year-old son who is still a student but married, and a 13-year-old son, a minor who was in the custody of the wife at the time of trial. The husband began practicing medicine in 1954 and his wife, although trained as a teacher, has not taught since his entry into the active practice of medicine. For seven or eight years during the marriage, the wife cared for

some of the bookkeeping of the medical practice and the family's personal affairs. There was evidence that the husband had been assisted in his medical career both upon his admission to medical school and during his early practice by his father-in-law who is also a physician. The wife had been injured in a skiing accident about five years prior to trial and continues to have pain in her back and was undergoing some variety of psychiatric treatment at trial. During the time that the husband had been actively practicing medicine, the wife had been a housewife, other than her part-time assistance in the matter of keeping books. The husband's medical practice is incorporated as a wholly owned corporation. His current gross salary from the corporation was shown as $75,000 per year and additional income was received from stocks, bonds and interest of approximately $10,000 per year. His salary from the corporation had been higher as is evidenced by his 1972 tax return which showed his salary income as $90,000. The husband testified that he had contemplated separation a few years prior to the actual separation, because he had been dissatisfied with his wife because she was domineering and had an ungovernable temper, and he claimed an interest in a different life style. The husband left in November of 1972, and the wife stated that he told her he was leaving because he wanted to live his own life. She also testified that upon his return a few days later for the purpose of getting clothes, he told her that he was going with Mrs. Heerman, his office girl. The husband denied that evidence. A great deal of evidence was offered concerning the relationship between the husband and Mrs. Heerman, and while there was no evidence that they had anything more than an employer-employee relationship before the separation, there was evidence of a more personal attachment between the two following the separation. The husband and Mrs. Heerman traveled to Vail, Las Vegas and Europe together. The husband admitted they occupied the same room, but claimed they used separate beds. There was evidence that Mrs. Heerman and the husband cooked and ate meals together in the husband's apartment and that Mrs. Heerman listed her telephone directory address and phone number at the address of the husband.

The record evidence concerning the marital assets was conflicting, the wife estimating the value of those assets to be $1,796,-506; the husband estimated the value to be $1,175,919. The husband estimated his monthly expenses to be approximately $4,000, and the wife estimated the monthly living expenses of the son at $396 with additional expense of $2,000 for tuition and some miscellaneous expenses for clothing and other items. The wife estimated her expenses at $2,918 per month with annual payments for taxes, charities and gifts of $3,900 additionally required. The wife's only independent source of income was approximately $200 a year from some stock in her possession. There was evidence of a trust with a principal of $27,000 which was for the benefit of the minor son under a gift naming the wife as trustee. The dissolution of the marriage is not in issue.

Before adverting to the specific points of error asserted by the husband, the scope of our review needs definition. The thrust of husband's complaints, although couched in language suggestive of errors of law, in reality also suggests a review of the evidence.

During the oral argument, the court referred counsel to the en banc decision of the Supreme Court in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), which enunciated the standard of review of court-tried cases under Rule 73.01 in the following language:

"Accordingly, appellate 'review . . as in suits of an equitable nature,' as found in Rule 73.01, is construed to mean that the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it

is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong. The use of the words *de novo* and *clearly erroneous* is no longer appropriate in appellate review of cases under Rule 73.01." (l.c. 32.)

■ The standard of review set forth in *Murphy v. Carron, supra,* governs this court's review. Because the decision in that case was handed down after briefing was complete in this case, the parties were permitted to file supplemental briefs addressed to the impact of *Murphy v. Carron* on the issues in this case, and these briefs have been considered in the determination of this appeal.

The husband first complains that the award of maintenance to the wife was improper because she has sufficient property after the decree to support herself, and there is no impediment to her employment. This claim of error is supported by a double barrelled argument that Section 452.335 RSMo 1969 requires as a predicate to an allowance of maintenance "specific" findings on lack of sufficient property as well as inability to be employed, and none were made nor, as husband asserts, could such findings be made upon the record in the case. The statute has no explicit provision requiring "specific" findings.

■ No case law is cited by the husband holding that the court was required to make "specific" findings on the necessary statutory elements before decreeing maintenance. No such authority exists, and a holding by this court that such "specific" findings are required in a divorce proceeding would create much mischief as well as fly in the face of established principle in court-tried cases. Many divorce decrees simply award maintenance or other relief ancillary to a dissolution, and no findings are made. These decrees are in reliance upon the rule and the statute which imply findings of fact necessary to support the decree.

To hold that the legislature intended by the enactment of Section 452.335 RSMo 1969 to repeal by implication the statutory rule making and decisional authority respecting the construction of court decrees is already foreclosed by the opinion of this court in *Stark v. Stark,* 539 S.W.2d 779 (Mo.App.1976) in which the exact contention here made was ruled in the following language:

"While we exhort the trial bench, as an aid to appellate review, to explain the facts upon which the adjudication directed by § 452.330(1) rests, Rule 73.01(d) [then in effect] and current Rule 73.-01(b)(2) impose no duty for findings of fact or conclusions of law in the absence of specific request by counsel. In that event, all fact issues are considered found in accordance with the result reached by the court. *Noland v. Noland,* 527 S.W.2d 696, 698[1] (Mo.App.1975). Nor can the prescription of § 452.330 that the court consider all relevant factors in the allocation of marital property be understood to imply a requirement—even in the absence of request—that a judge give a statement of reasons for the adjudication. The power of the supreme court to establish rules of practice and procedure is conferred by constitution. A rule so promulgated may be annulled or amended by the Legislature only by an enactment limited to that purpose. Article 5, § 5, Missouri Constitution of 1945. It is not the design of § 452.330 to amend or annul Rule 73.01."

The second stage of the argument is, of course, a claim that the findings implied by the award are either made without any substantial evidence or against the weight of the evidence under the standards announced by *Murphy v. Carron, supra.*

Husband argues that the allocation of marital property to plaintiff of property valued by the trial court of $608,801 less the residence debt of $53,898 would leave her net assets of $554,903. The husband claims that approximately $467,801 of the value of assets set off to the wife constitutes income producing property which will produce, according to the husband, "income in excess of $37,000 per year utilizing a conservative return of 8%." Husband's argument ignores the actual income from the property

set off to the wife which the wife's brief nets after taxes at $1,621.90 per month; but, more importantly, it is clear that the trial court was not convinced that the values assigned to the assets set off to the husband based primarily upon purchase price rather than present valuations were accurate. For instance, the farm property consisted of a 340-acre farm in Platte County Missouri. The wife claimed it was worth $340,000; and the husband said it was worth $136,000, the parties agreeing that the mortgage debt was $65,000. In evidence was the fact the husband listed it for sale at $350,000. The court expressed dissatisfaction with the evidence as to the farm value, but accepted the husband's valuation which is certainly conservative considering the purchase price of $111,000 and the improvements that have been made since the purchase. The parties also disagreed violently with respect to deferred compensation plans established by the husband for his benefit and the value of his professional corporation as well as the husband's interests in real estate partnerships owning land in the vicinity of the Kansas City International Airport valued by the court upon the basis of the husband's investment in those partnerships. The language of the trial court in making the finding with respect to these values is as follows, "Again, although the court seriously doubts that the amounts actually invested constitute a reasonable measure of the value of these assets petitioner, . . . offered no evidence upon which the court could base a different result." It was the wife's position throughout the trial that the assets which were finally determined by the court to be the marital assets were not a full and complete disclosure of the assets acquired during the marriage, the wife continuing to assert that the husband had hoarded cash from a variety of sources and had secreted this property to prevent a division. The trial court quite properly upon the record presented found that no basis existed for charging the husband with such resources or directing payment or division, but the court clearly from its written opinion and order had some doubt as to the accuracy of the disclosure by the husband and certainly the record reflects a basis for such doubt.

■ In sum, the trial court's division of the property reflects a division of property that places in the hands of the wife properties which have specific known values and a fixed earning capacity while the husband received properties subject to gain and increased income for which he was charged in the division with no more than the amount he himself was willing to say was the present value. In such circumstances, it is not for this court to say that the trial court abused its discretion in making an award of maintenance to the wife of $1,000 a month which, together with the reasonable income which might be achieved upon the property set aside to her, would still leave her income in an area close to her needs based upon the standard of living which had been established during the marriage.

The husband also includes in his argument a complaint that the trial court did not consider the future income to be derived by the wife from a trust of real property established by her husband and herself in which his medical property is located. This trust presently provides no income for the wife, but on the death of the husband's mother, the property will revert to the wife. The award of maintenance is, of course, reviewable and if, in the future, the property referred to provides substantial income for the wife, the trial court may, upon appropriate motion, reexamine the situation of the parties and make an appropriate adjustment in the awarded maintenance. It would be purely speculative to consider when such income might be available to the wife. The income potential of the particular real estate is apparently based upon the husband's continuing to pay rent as the principal tenant of the property. To speculate upon his continued occupancy to some future date when the wife may receive the income would be speculation upon speculation.

Husband also claims that the wife is capable of earning a portion of her support, baldly asserting there is no evidence in the

record that she was unable to obtain employment. This ignores the evidence of her physical disability as well as age and apparent need for supervision of the 13-year-old boy in her custody. This argument is amplified by asserting that an award of maintenance in this case amounts to a construction of the "appropriate employment" language of Section 452.335 as applying "only to the poor."

Cited is *Shilkett v. Shilkett,* 285 S.W.2d 67 (Mo.App.1955) which relied upon *Schwent v. Schwent,* 209 S.W.2d 546 (Mo. App.1948). In *Shilkett,* the court stated that "a divorced wife, who is capable of assisting herself, has no right to insist that her husband maintain her in idleness and luxury, simply because he has been adjudged the guilty party." However, the court in *Schwent,* upon which *Shilkett* relied, said that the wife should be maintained in the station of life and style which the husband's social standing and pecuniary faculties entitle her to.

■ The argument clearly overlooks the husband's acknowledged earning capacity and retention of the marital property most likely to appreciate, as well as the settled rule of law in this State that "need" does not refer to the bare necessities of life, but is related to the standard of living of the parties during the marriage.

Husband next makes a five-pronged attack upon the computation of value and the division of the marital property.

The first issue raised is the claim that the trial court failed to take into account the tax liability of the husband. That the court was aware of the tax implications is clear. The memorandum opinion specifically states that they are not being considered in the determinations of value made by the trial court. That is not to say that the trial court did not consider them in making the division of the property. In fact, husband points to the trial court order overruling the post decree motions to assert the implicit basis for his argument that the trial court intended a roughly equal division of assets. The specific language he refers to is a portion of the ruling referring to the trial court's valuation. That same order, however, in exact and specific terms indicates not only that the trial court considered the issue of the tax liability but also took it into account in making the division of the property.

"In the year 1973, respondent realized a substantial capital gain upon the liquidation of one of the airport property ventures. Taxes due and payable on this income in this and subsequent years amount to approximately $100,000. Respondent suggests that the amount of cash set over to petitioner should be reduced by one-half of this tax obligation. It should first be noted that no order of this Court can affect collection procedures of the Internal Revenue Service or the State Department of Revenue who, in the case of joint tax returns, may look to husband or wife or both for payment of the tax. The fault in respondent's approach, however, lies in the assumption that the Court intended to accomplish an equal division of marital assets. Such was not the plan although, as was observed previously, a roughly equal division resulted from the economic factors dictated by the character of the assets. The Court did, however, recognize the immediate call upon respondent's resources for funds to meet the tax payment due April 15, 1974. It was precisely for this reason that the Court set over to respondent from the marital assets the sum of $56,626 in cash to pay his taxes and such other marital debts as were then currently due."

Husband next asserts that the value of the medical building held in trust should be included in marital property. In colloquy between the court and counsel, it appears that the husband and wife joined in a trust conveying real estate, which apparently is the medical building occupied by the husband, to a trustee irrevocably divesting themselves of any interest in the property except as provided in the trust. That trust provided for income to the mother of the husband during her lifetime, she being at the time of trial 83 or 84 years old. At one

point, the transcript shows the income from the property to the mother-in-law, then to the wife—in another place, wife receives the fee interest. But, in any event, all her rights in the property arise by virtue of the transfer by both the husband and wife to the trust.

The argument is that the wife's remainder interest and not the present value of the property is to be included. The husband's proof was of present value, less his mother's life estate. No mention is made of the possibility of the wife's death prior to the death of the mother.

The husband states in his brief that the assigned value was agreed to by the parties. There was a stipulation that certain exhibits would be considered as part of the record in this case, and the value of the trust property was set forth in the husband's exhibit as $125,000 with a residual value of $72,750, but there is no agreement by the wife that this represented the proper value of the real estate, nor is there anything discernable from the record concerning the value of her contingent interest when the uncertainty of her survival is considered. The husband argues that the property is not within any of the exceptions set forth in § 452.330 subsection 2, but this record certainly leaves an inference that the wife's separate contingent remainder interest in this property, established by the trust instrument, constituted a gift to her of the extent of the husband's interest in the property at the time the trust was created. In any event, it is clear from the court's discussion that he was thoroughly apprised of the asset and its contingent value, and it cannot be said that he did not consider it in making the division of marital property.

■ The husband next asserts that the trial court overvalued the marital assets associated with the farm operation, contending that there was no evidence as to the value ascribed to the farm property consistent with the findings of the trial court of $80,000. The trial court's memorandum opinion accepted the values ascribed to the farm equipment and cattle by the wife. In the memorandum opinion, the trial court set forth a value of $33,500 for farm equipment taken from the 1972 tax return of the parties, also a combine valued at $15,300, a bulldozer valued at $6,000, and a value for 33 cattle and 2 horses of $35,000. This totals $89,800, which is in excess of the trial court's finding of value with respect to livestock and equipment, without regard to any value of improvements to the land itself. The wife's value of the cattle seems high, and the husband's seems low; it was for the trial court to resolve the issue, and it did so. The husband does not complain that the trial court accepted his value of the farm land at the figure of $136,000 instead of the wife's value of $340,000. The trial court is entitled to deference on the issues as to value on this record, for he had only the assertions of the parties to guide him in the assessments of value.

Husband complains of the separation of the Beverly Lakes cabin from the farm property. The argument is based upon the testimony of the husband that the Beverly Lakes cabin was, in fact, utilized as the farm home. The Beverly Lakes cabin is apparently a recreational home, and the evidence is clear that the farm has a house trailer upon it for the use of the farm tenant; and there is no showing that there is such a physical connection between the Beverly Lakes cabin and the farm that their separation in the distribution of the marital property damages the value of either. This point seems to be more a matter of pique on the part of the husband that he did not receive this particular asset while receiving the farm than it is any claim of substance. The point is without merit.

■ The fifth and final attack on the valuation and division of the marital property is an assertion by the husband that it is "grossly unjust." Buttressing that vague contention, the husband argues that if his values on the farm equipment are accepted and consideration is given to his tax liability and the value of the wife's contingent interest in the property in trust, the award is "grossly unequal." What has been said heretofore concerning the specific items is a

sufficient factual answer to this contention. Husband also argues upon the basis of the remarks by the trial judge in overruling the post decree motions that the basis for what husband characterizes as an unequal award shows the trial court made the division of property upon the basis of "fault" of the husband. He further argues that the inclusion of "conduct" of the parties in Sections 452.335 and 452.330 RSMo 1969 is modified by the legislative admonition of "relevancy" also contained in those sections. Husband then argues that the only relevant conduct to be considered is that conduct which affects the marital property. To so hold would read into the statute a refinement that does not appear from the legislative language. Certainly with respect to Section 452.335, no such limitation was intended, for there the legislature refers only to the "conduct" of the party seeking the maintenance award. As to Section 452.330, the "conduct" of the parties is legislatively declared to be a "relevant" factor, and the intent could have only been to refer to general conduct of the parties during the marriage. In *Conrad v. Bowers,* 533 S.W.2d 614 (Mo.App.1975), the court specifically considered and rejected the same argument. The court said, l.c. 620:

> "In view of our statute, it is clear that the act requires the trial court to consider, as one of the relevant factors in the division of marital property, the 'conduct' of the parties during the marriage. This means both good conduct and marital misconduct. It is not limited to conduct relating to financial misdeeds as urged by counsel for appellant."

This view of the meaning to be attributed to the word "conduct" in Section 452.330 RSMo 1969 is supported by the legislative action in its enactment. For a discussion of that legislative action, see "No-Fault Divorce" by Judge Fred E. Schoenlaub, *Journal of Missouri Bar,* November, 1971, p. 579, l.c. 583.

Husband's complaint with respect to child support is that the trial court was in error in failing to consider the resources of the wife and the trust established for the benefit of the child in fixing the child support.

Husband, without any evidentiary support, indicates that the income from the trust would be $2,100 a year at what the husband terms a conservative rate of return. Again, the record is skimpy. All that appears is the claim of the husband that the assets in the trust were worth $27,000. The trust instrument is not in evidence. It seems that the trust property consists of shares in a mutual fund, but that is not clear. Again, from colloquy and not from evidence, it appears that the trust is a simple declaration under the uniform gifts to minors law, Chapter 404 RSMo 1969. Under Section 404.040 of that act, the wife who was apparently the trustee is under no duty to provide support for the beneficiary and is specifically permitted to exercise discretion with respect to payment on behalf of the minor "with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose." Section 404.040(2) RSMo 1969.

The trial court clearly could not in considering the welfare of the child be sure that that income would be available to the minor whatever it may have been, and there is certainly no record evidence which gave the trial court any clear indication of the income received on an annual basis by the trust. In the circumstances, the trial court cannot be convicted of error in not reducing any appropriate child support upon such a tenuous basis. As to the husband's argument that where both parties are equally capable of support, the trial court errs in awarding a child support payment, the argument again ignores the statutory admonition contained in Section 452.340 RSMo 1969 which lists as the first factor to be considered the father's primary responsibility for the support of his child. Husband also complains of the fact that approximately half of the child support award was for the purpose of maintaining the child in a private school; but again, the statute directs the trial court to consider the standard of living the child would have

enjoyed had the marriage not been dissolved, and clearly, the circumstances of these parties prior to the divorce were such that the child's attendance at a private school would not have been considered as unusual for persons of such means and earning capacity. Husband relies upon *Williams v. Williams,* 510 S.W.2d 452 (Mo. banc 1974), which is factually quite different from the instant case. He misconstrues the language of that case to say that the holding of *Williams v. Williams* is that where the resources of the parents are equal, an order of support against the father constitutes an abuse of discretion. It is apparent from a reading of *Williams* that the basis for decision in the *Williams* case was that the effect of the support order reversed in that case was to shift monies from two of the children for the benefit of the other two children. It simply has no application to a case such as this where the child support order involves only one child in a situation where the resources of the husband and his earning capacity are as great as they are in this case.

Husband finally complains of the trial court inclusion of an order requiring the husband to pay an additional attorney fee of approximately $7,000. The same argument has been recently advanced in this court in *Vanet v. Vanet,* 544 S.W.2d 236 (Mo.App.1976). No more needs saying than to quote the contention and the holding of the court in that case:

"The principal argument advanced by the husband appears to be that the wife was equally if not more financially able to pay her attorney than was the husband. Section 452.355, RSMo Supp.1973, herein applicable, states that the '. . . court . . . after considering all relevant factors including the financial resources of both parties may order a party to pay a reasonable amount . . . to the other party . . . for attorney's fees . . . .'

The 'financial resources' of a party referred to in Section 452.355, supra, or, as more basically expressed, the need of a party seeking attorney fees, is but one factor to consider in awarding such fees." [Page 243].

Husband's final point on this appeal is his claim that the trial court erred in admitting deposition testimony of the husband which was neither admissions nor impeachment. The complained of deposition testimony has been examined in the light of all the evidence offered in the case. A great deal of the testimony or, as the husband characterizes it, the statements of counsel in the form of questions addressed to the husband concerning his liaison with his office girl, do not constitute either admissions or matters of impeachment. All of the offending material came in in some other fashion during the trial of this case, and on the whole record, the reading of this deposition testimony does not constitute reversible error. Rule 84.13. Section 512.160 RSMo 1969. *O'Keefe v. United Rys. Co. of St. Louis,* 124 Mo.App. 613, 101 S.W. 1144 (1907).

The entire transcript has been reviewed to determine if a "firm belief" is engendered that the decree is wrong. That "firm belief" does not arise. The wife might have been better served with more evidence of value and less of fault. This court shares the skepticism of the trial court as to much of the evidence of value, but like the trial court, this court must take the record as the parties make it. From a welter of confusion and conflicting claims and opinions, the trial court made a distribution of the property of the parties and assigned the responsibility for the maintenance and support. There is no basis for this court to attempt to remake the decree.

Judgment affirmed.

All concur.