**Joyce M. SAWTELL,
Petitioner-Respondent,**

v.

**Bob K. SAWTELL,
Respondent-Appellant.**

**No. KCD 28965.**

Missouri Court of Appeals,
Kansas City District.

June 12, 1978.

Motion for Rehearing and/or Transfer
Denied July 20, 1978.

Application to Transfer Denied
Sept. 12, 1978.

---

Robert G. Duncan, Robert E. Hart, Michael E. Reardon, Kansas City, for petitioner-respondent.

R. Brian Hall, Hall & Stahl, Gladstone, for respondent-appellant.

Before SOMERVILLE, P. J., and PRITCHARD and DIXON, JJ.

DIXON, Judge.

This is a civil action for dissolution. The judgment entered by the court dissolved the marriage and granted petitioner-wife custody of the two minor children. It further ordered respondent-husband to pay $250 per month for the maintenance of the minor children, granted the wife maintenance in gross of $15,000, periodic maintenance of $150 per month, and attorney's fees of $1,000. The judgment also made a division of property. The wife was awarded the residence, all furnishings, and a 1975 Granada automobile. The husband was awarded the lake house at Table Rock Lake, with all furnishings, a Cobalt boat with motor, sailboat, and trailer. The trial court also set off to each of the parties the respective pension rights. The husband appeals the award of gross and periodic maintenance but does not question the division of property. The husband raises a single point of error, that is, that the trial court abused its discretion in awarding excessive maintenance in the amount of $15,000 in gross and periodic payments of $150 per month.

Husband and wife had been married for 23 years. They have two children, ages 15 and 19. At the time of trial, wife was 43 and husband was 45. Wife worked until she got pregnant with the first child and started working again the later part of 1972. All of her earnings went towards the lake house. Wife works for a school district doing video taping, and her net income is $398.46 per month. Her house payment is about $180 per month. She doesn't have a savings account or any money. Wife was "surprised" when they separated because she thought they had a normal marriage. A great deal of evidence was offered concerning the misconduct of the husband during the marriage.

Husband works for the Kansas City, Missouri, Police Department and was promoted to Major in March, 1976. His yearly gross income is now about $20,500. Before this raise, his monthly net take-home was $1,154.51. Husband estimated his living expenses to be $721 per month. He testified that he wants to give the wife a fair amount of maintenance if she needs it. Husband now lives in an apartment and agreed that the lake house is a luxury.

The residence in Kansas City was purchased in 1961 for $21,500. The mortgage is around $12,000. The lake property cost $6,600 for the lot and $23,500 for the house, a total of $30,100. There is $2,000 owed on the lot and $7,000 owed to the credit union for acquisition of the lake house. There

was conflicting testimony on the present values of these properties so the low to high values are given here. The residential property is now worth between $30,000—$40,000, and the lake property between $33,000—$35,000. The value of the wife's pension rights is not shown but could only have been of relatively small value considering the length of time she had worked and her salary. On the other hand, the husband's pension, payable at age 52 or some five years subsequent to the divorce, was in the amount of at least $1,000 a month and would be paid in addition to any other earnings.

The standard of review of court-tried cases is governed by Rule 73.01 as enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The trial court's determination of the amount of maintenance is discretionary, and we review this record only to determine whether that discretion has been abused. *Naeger v. Naeger*, 542 S.W.2d 344 (Mo.App.1976).

Recognizing that limitation upon this court's review, the husband argues the necessary abuse of discretion is shown because (1) there were no findings of fact or law; (2) that the evidence does not support the awards and is insufficient to justify them; and (3) that there was "evidence" the awards were punitive in nature.

First, the husband complains that there were no specific findings made by the court in accordance with the requirements of the statute. This contention is without merit. Relevant here is the fact that no specific request for findings of facts or conclusions of law was made by counsel. In the absence of a specific request by counsel, Rule 73.01 imposes no duty on the trial court to make specific findings of fact or conclusions of law. The trial court is not required to make specific findings on the necessary statutory elements before decreeing maintenance. When no findings or conclusions are made, all fact issues are considered found in accordance with the result reached. *Butcher v. Butcher*, 544 S.W.2d 249 (Mo.App.1976); *Stark v. Stark*, 539 S.W.2d 779 (Mo.App.1976).

Next, the husband contends that these awards were contrary to the intent and clear language of § 452.335, RSMo Supp. 1975, in that there was no evidence of record which would sustain such awards. Here, the husband claims that there is no evidence as to the wife's expenses except the payment of $180 per month mortgage upon the house. But, the wife's financial statement is attached at the end of the transcript filed with this court. This was filed in the circuit court as a sort of pleading, as was the husband's. Both were referred to without objection at trial as having been previously filed with the trial court and were utilized in cross examination. This financial statement estimates the wife's total monthly expenses, including the $180 house payment, to be $874. Both parties' attorneys approved the transcript as filed, and the statements were a part of it and obviously were considered by the trial court in making the awards.

Guides to the factors a court considers in determining whether a maintenance award should be made and, if so, in what amount, are outlined in *In re Marriage of Schulte*, 546 S.W.2d 41 (Mo.App. 1977), and need not be repeated here. In determining the reasonableness of the award, the court balances the spouse's ability to pay against the reasonable needs of the spouse seeking maintenance. *Badalamenti v. Badalamenti*, 566 S.W.2d 229 (Mo. App.1978); *Larison v. Larison*, 524 S.W.2d 159 (Mo.App.1975). To warrant appellate interference, the amount of the maintenance award must be patently unwarranted or wholly beyond the means of the spouse who pays maintenance. *In re Marriage of Schulte, supra.*

Applying these rules to the facts presented here, the wife has no property other than the marital property apportioned to her, and this property was non-income producing. Her earnings are not sufficient for her to support herself. Therefore, the two conditions prescribed by § 452.335 are met, and it was appropriate for the trial court to make a maintenance award.

In determining the amount to be awarded, the facts considered relevant are that the parties had been married for 23 years, the wife was 43 years old at the time of the dissolution, a fairly high standard of living had been established during the marriage, there was no evidence of misconduct on the wife's part during the marriage, and the husband's yearly gross income is $20,500 while his estimated monthly expenses are $721.

Also to be considered in connection with the allowances made is the property set off to the parties. The husband received his pension free of any claim of the wife, as well as the equity in the lake home which was from $24,000 to $26,000. The value of the husband's pension is not shown, but obviously $1,000 a month at age 52 is a valuable annuity.

There was substantial evidence presented to justify the maintenance award, and the amount of the award was a reasonable balance between the husband's ability to pay and the wife's reasonable needs. The trial court did not abuse its discretion in the maintenance awards made to the wife.

The husband's final argument is that there was evidence that the maintenance award was punitive in nature. Here, the husband contends that the court had punitive motives in making the maintenance award to the wife based solely on the following language of the court in giving its judgment:

> ". . . I do want you to understand this is not to reward or punish anyone, that is not my intention. At the same time, I will say that I wonder what in the world is going on in the Police Department over there. It sounds like a Peyton Place to me. That's the reason we don't get any more done than we do."

The trial judge's casual remark simply indicated his concern over the "extra-curricular" activities of the police department in general. The remark was not only directed at the husband in this case, but also two other persons who work for the police department and whose extra-marital activities were in evidence. Without going into detail, suffice to say that in this context, the trial judge's comment is understandable.

In addition, the trial court prefaced its remark with a cautionary note to the effect that the comment was *not* to be understood as indicating any punitive intention on its part. Indicative, also, of the lack of punitive intent on the part of the trial court, is the amount of the award itself in the light of the evidence of earning capacity and the property division. It does not assume punitive proportions, but was entirely reasonable.

Under these circumstances, we hold that no punitive intent has been shown to exist on the part of the trial judge, and there has been no abuse of the court's discretion in this regard.

The decree of the trial court granting the wife maintenance in gross of $15,000 and periodic maintenance of $150 per month is affirmed.

All concur.