In re the MARRIAGE OF Naomi R. FAULKNER, Petitioner-Appellant,

and

James W. Faulkner, Respondent.

Nos. 39539, 39215.

Missouri Court of Appeals,
Eastern District,
Division Four.

April 24, 1979.

Motion for Rehearing or Transfer to Supreme Court Denied May 24, 1979.

Application to Transfer Denied
July 17, 1979.

Richeson, Roberts, Wegmann, Gasaway, Stewart & Schneider, Jack C. Stewart, Hillsboro, for petitioner-appellant.

Geoffrey L. Pratte, Raymond R. Roberts, Roberts & Roberts, Farmington, for respondent.

DOWD, Presiding Judge.

This is an appeal from a judgment rendered by the Circuit Court of St. Francois County in a dissolution of marriage case. The appellant, Naomi Faulkner, does not challenge the court's finding that the marriage was irretrievably broken, but asserts that the court erred in its division of the parties' marital property.

Naomi and James Faulkner were married for 27 years. No children were born of the marriage. Appellant testified that the couple had not engaged in sexual relations for approximately 10 years prior to the institution of this suit. She admitted, however, to having conducted a six year affair with a "gentleman friend", as well as to having had a brief interlude with another man years before. Respondent testified that his wife drank to excess and stayed out late at night. She would publicly berate him for not imbibing in alcoholic beverages despite his diabetic and ulcerous condition. Upon the parties' separation in August, 1975, the marital property was divided as follows:

Appellant

| | |
|---|---|
| ½ Proceeds from Sale of Home | $19,600.00 |
| Household Goods | 4,850.00 |
| Buick Automobile | 2,495.00 |
| | $26,945.00 |

Respondent

| | |
|---|---|
| ½ Proceeds from Sale of Home | $19,600.00 |
| Household Goods | 2,102.00 |
| Chevrolet Automobile | 1,248.00 |
| | $22,950.00 |

The trial court disposed of the remainder of the marital property as follows:

Appellant

| | |
|---|---|
| Her life insurance | 51.07 |
| Missouri Natural Gas Stock | 800.00 |
| Ozark Investment Club Shares | 1,079.93 |
| Severance Pay and Retirement Fund | 13,000.00 |
| ⅓ U.S. Savings Bonds | 6,152.67 |
| | $21,083.67 |
| Prior Settlement | 26,945.00 |
| Total Shares | $48,028.67 |

Respondent

| | |
|---|---|
| His life insurance | 2,813.02 |
| Profit Sharing Plan (present value) | 20,000.00 |
| ⅔ U.S. Savings Bonds | 12,305.33 |
| | $35,118.35 |
| Prior Settlement | 22,950.00 |
| Total Shares | $58,950.00 |

■ Appellant contends that the trial court erred in 9 respects in dividing the marital property. She does not challenge the property division agreed to upon separation or the trial court's disposition of the life insurance policies. The contentions of error are as follows: 1) the attributing to her of salary which she would have received at the Savings and Loan had she not resigned; 2) the attributing to her of the shares of Missouri Natural Gas Stock and Ozark Investment Club; 3) the setting apart to her the $13,000.00 from her severance pay and retirement fund; 4) the finding that the present value of respondent's profit sharing plan was $20,000.00; 5) the failure to find that respondent's retirement plan was of substantial value; 6) the considering of maintenance pendente lite paid to appellant in finding the parties' income to be substantially equal; 7) the considering of future income based on the expected retirement ages of the parties; 8) the overvaluing of assets awarded to appellant and failure to award her a fair share of the U.S. Savings Bonds; and 9) the failure to award appellant adequate attorney's fees.

As this was a court tried case, our review is governed by the framework set forth in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. Banc 1976). Accordingly the judgment will be affirmed unless it is not supported by substantial evidence, or is against the weight of the evidence or is an erroneous declaration or application of the law.

In her first point, appellant contends that the trial court erred in denying her maintenance and in imputing to her income which could be produced through her best efforts and ability. This latter complaint stems from the court's finding that had appellant not resigned from her position with Ozark Federal Savings and Loan in October 1973, her salary at the time of trial would have been $11,731.23.[1]

■ A court may impute income to a spouse when the spouse's reduced income reasonably could be understood to be a voluntary declination to earn. *Foster v. Fos-*

1. At this juncture it must be noted that the trial court, in its findings of fact and conclusions of law, noted that appellant forfeited $3,946.21 in pension benefits when her employment with Ozark Federal Savings and Loan was terminated. The transcript reveals, however, that the amount forfeited was $2,302.46.

*ter,* 537 S.W.2d 833 (Mo.App.1976). In a similar vein, a request for maintenance may be denied if the spouse is able to support herself in a course of employment which corresponds with her skills or interests. *Brueggemann v. Brueggemann,* 551 S.W.2d 853 (Mo.App.1977).

■ The record reveals that appellant's employment with Ozark Federal Savings and Loan was terminated after she was assaulted in the bank's parking lot by the wife of her extra marital lover. At trial appellant could not recall whether her resignation was voluntary or not. Appellant is currently employed as a realtor, and is compensated on a commission basis.

Following an inquiry into the parties' economic circumstances, the court determined that the income ascribable to each party was substantially equal. Any pre-existing differential in income was deemed to have been offset by respondent's payment of $3,400 to appellant pursuant to the latter's motion pendente lite. The court further found that the appellant, being eight years younger than the respondent, could look forward to earnings for sixteen years prior to her retirement. The respondent, on the other hand, could look forward to earnings for eight years until normal retirement. Aside from having been found to possess a more extended earning potential than the respondent, the appellant was also determined to be in better health than was her husband.

The trial court did not err in denying appellant's request for maintenance or in imputing income to her. In addition to considering the parties' economic situation, the court found that appellant's adulterous relationships and excessive drinking were factors to be taken into account in dividing the marital property. § 452.330 RSMo 1973. The court's findings in these challenged respects were neither unsupported by the evidence nor an abuse of discretion. Appellant's point one is without merit.

In her second and third points relied on, appellant challenges the court's division of marital property because assets which were nonexistent at the time of trial were attrib-uted to her share. The assets referred to in point two were the Missouri Natural Gas Stock and Ozark Investment Club Shares, and those referred to in point three were her severance pay and retirement benefits.

During the course of the marriage, the parties acquired 10 shares of Missouri Natural Gas Stock worth $800. Respondent testified to having endorsed and given the stock certificates to appellant in late 1974 or early 1975. He also testified that he never received any of the proceeds from the sale of this stock. While married, the parties also acquired shares in the Ozark Investment Club. The record reveals that a check for $1,079.93 payable to the respondent was cashed on May 3, 1975. The check bore respondent's signature although he denies ever having endorsed the check, or ever having received the proceeds from the cashing of same. The court found that these two assets had been set aside or appropriated by the appellant.

The court also found that a bank deposit in the amount of $13,000, representing appellant's severance and retirement benefits, was includable in the latter's share of marital property. Appellant contends, however, that the proceeds from the sale of the stock and of the bank account were exhausted at the time of trial. The record indicates that appellant attributes the dissipation of the $14,879.93 to her purchase of snow tires, household goods, income tax payments, real estate broker tuition and a loan of $2,000 to a friend. Appellant did not introduce any evidence substantiating the cost of the items purchased. The record also discloses that appellant did not inform respondent of the existence of the bank account until after the couple were separated. Consequently, respondent never had access to the account.

■ In order to achieve a just division of marital property, the trial court is empowered to balance the "financial equities" existing between the parties. *McCully v. McCully,* 550 S.W.2d 911 (Mo.App.1977). The trial court's finding that appellant appropriated these three funds and set them

aside unto herself was supported by the evidence and not an abuse of discretion. The inclusion of the depleted assets in the division of marital property apparently stemmed from the court's reluctance to deny respondent the benefit of the assets dissipated by appellant. *See, Daniels v. Daniels,* 557 S.W.2d 702 (Mo.App.1977). Points two and three are ruled against the appellant.

In her fourth point relied on, appellant contends that the trial court erred in finding that respondent's profit sharing plan had a present value of $20,000 because the court considered both tax liability and the current inflationary trend in computing its value. Appellant contends the court erred further in finding that the assets of the plan would not be available to respondent until 1984.

In its extensive findings of fact and conclusions of law, the trial court stated that according to the trust agreement, the profit sharing plan was a marital asset set apart for respondent. The court found that although the plan had a present value of $34,282.82 to the trustee, it had a present value of $20,000 to respondent. The court employed two approaches in arriving at this conclusion.

First, the court found from the testimony adduced at trial, that if immediate distribution were to be made before respondent's retirement, he would be exposed to a federal tax liability of approximately $13,600. This latter figure, when coupled with the state tax liability would reduce the "net distributable asset" to no more than $20,-000. The court also found that the funds would not be available to respondent until 1984, as expressed in the trust. The court determined that the inflationary trend must be considered in computing the value of the asset in future dollars. This calculation revealed that the present value of the asset did not exceed $20,000.

▆▆ A court is entitled to take cognizance of current inflationary trends and tax liability in dividing marital property. In fact, the failure to take such factors into account in this regard has been held to be unfair. *Klinge v. Klinge,* 554 S.W.2d 474 (Mo.App.1977) (inflation); *Butcher v. Butcher,* 544 S.W.2d 249 (Mo.App.1976) (tax). Point four is ruled against the appellant.

▆ In her fifth point, appellant contends that the trial court erred in finding that respondent's retirement plan was not a present marital asset. The Supreme Court of Missouri has recently declined to review whether a spouse's "vested" interest in a retirement plan is to be considered marital property. *In re Marriage of Brethauer,* 566 S.W.2d 462 (Mo. en banc 1978). It has been settled, however, that a retirement plan to which a spouse has contributed during the marriage and in which the spouse's interest is either contingent or subject to divestment, is not marital property. *Daffin v. Daffin,* 567 S.W.2d 672 (Mo.App.1978). Retirement benefits which become vested upon actual retirement have been declared "too speculative" to be considered marital property for alimony purposes. *Robbins v. Robbins,* 463 S.W.2d 876 (Mo.1971).

▆ Mr. Weigel, of the Comptroller's office of respondent's employer, St. Joe Mineral Corporation, testified to the nature of the latter's retirement plan. He stated that the normal retirement age under the plan was 65 years old. If respondent were single and died before retirement age, his estate would not receive any benefit from the plan. Upon retiring at age 65, respondent would be entitled to retirement benefits for as long as he lived. If respondent were to die one month after retiring, his estate would receive one month's worth of retirement benefits. Following the reasoning announced in *Robbins,* supra, it is our opinion that the retirement plan to which respondent contributed is not marital property because the scheme of disposition of benefits is too speculative and not conducive to computation. Point five is ruled against the appellant.

▆ In her sixth point, appellant alleges that the trial court erred in finding that the incomes of the parties were substantially equal because the court allegedly included

maintenance pendente lite which would terminate upon dissolution of the marriage, in its computation of appellant's income. As articulated in our discussion of point one, the court attributed appellant's salary to be $11,700.00 and respondent's salary to be approximately $13,600. The disparity was deemed by the court to be offset by respondent's payment of $1,000 of appellant's attorneys fees as well as approximately $2,400 in maintenance pendente lite. Appellant's earning capacity was determined to be equal to that of the respondent. The court also concluded that respondent's living expenses exceeded appellant's in view of the former's health condition and commuting costs. The court's finding is supported by substantial evidence of the economic circumstances of the parties. Point six is ruled against the appellant.

In her seventh point appellant asserts that the trial court erred in its division of the marital property insofar as its alleged speculation as to appellant's future income and retirement age was not permissible under § 452.330 RSMo 1973.

■■■ It must be noted however, that the factors listed in § 452.330 *supra* are not exclusive of other considerations necessary to the just division of marital property. *Arp v. Arp*, 572 S.W.2d 232 (Mo.App.1978). Age is an integral part of a court's consideration of the economic circumstances of the parties. *Conrad v. Bowers*, 533 S.W.2d 614 (Mo.App.1975). Point seven is ruled against the appellant.

■■■ In her eighth point appellant alleges that the trial court overvalued the assets it set aside to her and erred in its allocation of the U.S. Savings Bonds. The court awarded ⅔ of the bonds to respondent and ⅓ to appellant. The latter contends that she contributed equally to the acquisition of the bonds.

Appellant's point does not specify the particular items alleged to have been overvalued by the trial court. We have heretofore addressed the propriety of the court's action in regard to the imputation of appellant's income, the Missouri Natural Gas and Ozark Investment Club Shares, the bank deposit at St. Louis Federal Savings and Loan, respondent's profit sharing plan, and respondent's retirement plan and have found no trial court error.

■■■ Similarly we find no error in the court's division of the U.S. Savings Bonds. The court reviewed the conduct and economic circumstances of the parties before allocating the assets. The court expressly found that appellant's "adulterous relationship has been principally responsible for the breaking of the marriage and that it should be taken into account in the division of the property between the parties." (See, *Conrad v. Bowers, supra*). Furthermore, it should be noted that the division of property is required to be just and equitable rather than equal. *Smith v. Smith*, 552 S.W.2d 321 (Mo.App.1977). Point eight is ruled against the appellant.

In her final point, appellant alleges the trial court erred in failing to order respondent to pay the former's attorneys fees. Respondent was ordered by the trial court to pay appellant a total of $2,000 in attorneys fees: $1,000 for fees incurred by appellant during the pendency of the dissolution suit, and $1,000 as per the court's final order.

■■■ If the court determines that one party is more capable of bearing the expense of the other party's attorneys fees, it may in its discretion enter an order directing the payment of same. *D.E.W. v. M.W.*, 552 S.W.2d 280 (Mo.App.1977), § 452.355 RSMo 1973. In this case however, the trial court specifically found the incomes of both parties to be "substantially equal". We cannot say that the court's refusal to order respondent to pay all of appellant's attorneys fees amounted to an abuse of discretion. Point nine is ruled against the appellant.

Judgment affirmed.

CRIST, J., and ALDEN A. STOCKARD, Special Judge, concurs.