**Monique STEFFAN, Respondent,**

v.

**Daniel R. STEFFAN, Appellant.**

**No. WD 30713.**

Missouri Court of Appeals, Western District.

April 7, 1980.

Edmund R. Lipowicz, II, Independence, for appellant.

Jack A. Cochran and Rose Anne Nespica, Cochran, Tyree, Oswald, Barton & McDonald, P. C., Blue Springs, for respondent.

Before CLARK, P. J., and DIXON and SOMERVILLE, JJ.

SOMERVILLE, Judge.

Two appeals by the same party are pending in this dissolution of marriage case. One is an appeal by the husband from an order or judgment awarding the wife temporary maintenance and the other is an appeal by the husband from the decree entered in the dissolution of marriage proceeding.

The appeal from the dissolution decree questions the decretal provisions touching maintenance, attorney fees and the division of marital property. The appeal from the order or judgment awarding the wife temporary maintenance questions the amount of temporary maintenance awarded.

A statement of facts is appropriate at this point. On September 21, 1977, the wife filed a petition to dissolve a marriage of some twenty-one years standing. Neither party questioned the finding of the trial court that the marriage was irretrievably broken. Two of three children born of the marriage were living at the time of the trial, both of whom had become emancipated. Consequently, evidence adduced at the trial on November 13, 1978, principally dealt with matters of a more mundane nature—money and property.

A division of marital property resulted, basically, in the wife receiving the family home valued between a low of $65,000.00 and a high of $72,800.00, subject to a deed of trust securing payment of a promissory note in the unpaid principal sum of $21,-000.00 which the wife was obligated to pay, plus various items of personal property consisting of "household furniture, goods and

appliances" and a 1972 Cougar automobile. The division of marital property resulted, basically, in the husband receiving an "office building" valued between a low of $50,-470.00 and a high of $58,900.00, subject to a deed of trust securing payment of a promissory note in the unpaid principal sum of $39,000.00 which the husband was obligated to pay, a "four-plex" valued between a low of $17,407.00 and a high of $22,500.00, subject to a deed of trust securing payment of a promissory note in the unpaid principal sum of $18,000.00 which the husband was obligated to pay, a "four-plex" valued between a low of $10,463.00 and a high of $15,500.00, subject to a deed of trust securing payment of a promissory note in the unpaid principal sum of $9,500.00 which the husband was obligated to pay, plus a 1974 Cadillac, a 1959 Cadillac, a 1967 Cadillac, a 1967 "Princess Trailer", a 1969 "fishing boat and motor", and certain items of "household furniture, goods and appliances".

The wife, born in France and raised in Germany, had the equivalent of a high school education. During the marriage the wife's principal duties were that of housewife and mother, although she had, at indeterminate times, engaged in limited periods of employment outside the home. At the time of trial, however, she was regularly employed as an "assembly line worker" by an electronics firm. Her monthly take home pay was approximately $389.00. The monthly payments on the family home, which the wife was obligated to assume and pay by the terms of the dissolution decree, amounted to $252.00. The wife's estimated monthly living expenses, including the house payments, amounted to $875.00.

At the time of trial the husband was engaged in the business of selling real estate. Previously, he had been engaged in the business of selling life insurance. Joint income tax returns of the couple introduced in evidence showed adjusted gross income for 1974 in the amount of $19,091.00, for 1975 in the amount of $19,736.00, for 1976 in the amount of $17,770.00, and for 1977 in the amount of $17,700.00. They also disclosed that the wife contributed $1,557.00 to the adjusted gross income in 1974, $2,783.00 in 1975, nothing in 1976, and $2,605.00 in 1977. At the time of trial, to wit November 13, 1978, the husband testified that to date during 1978 he had earned approximately $3,000.00 to $3,500.00 in real estate commissions and had received approximately $4,000.00 in "residual commissions" from life insurance previously sold. Evidence adduced at the hearing on the wife's motion for temporary maintenance revealed that the husband was netting approximately $265.00 a month from the rental property which he ultimately received in the division of marital property. The husband's estimated monthly living expenses amounted to $900.00.

Refocusing on the appeal from the original decree the husband, with respect to the decretal provision as to maintenance, contends that the trial court "abused its discretion" in awarding the wife $350.00 per month as maintenance because the wife "did not meet the conditions required by Section 452.335.1(1), (2), RSMo 1978", and the amount awarded was "grossly excessive" as it "did not take into consideration the factors" of Section 452.335.2(1), (6), RSMo 1978. With respect to the decretal provision as to attorney fees, the husband contends that the amount awarded "was excessive". With respect to the decretal provision dividing the marital property, the husband contends the division was incomplete.

The standard of review in this court tried case is governed by Rule 73.01.3 as explicated in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976), tempered only by due recognition of an additional element engrafted by *Kieffer v. Kieffer*, 590 S.W.2d 915, 919 (Mo. banc 1979), *infra*, regarding appellate review of awards of attorney fees.

First, as to the amount of maintenance, the husband contends that the evidence falls short of meeting legislatively mandated prerequisites of Section 452.335.-1(1), (2), RSMo 1978: "In a proceeding for . . . dissolution of marriage . . . the court may grant a maintenance order to

either spouse, but only if it finds that the spouse seeking maintenance (1) [l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and (2) [i]s unable to support himself through appropriate employment . . . ." This contention rises or falls on the husband's legally shallow argument that if the wife sold the family home and invested the proceeds the income therefrom in conjunction with her earnings as an "assembly line worker" would amply support her. The husband's argument presupposes that the wife under existing law should be compelled to sell the family home. Such is a false premise. The family home, because of its non-income bearing feature, occupies a unique status in the case law of this state appertaining to dissolution of marriage proceedings. As noted in *Brueggemann v. Brueggemann*, 551 S.W.2d 853, 857 (Mo.App.1977), with reference to Section 452.335.1(1), (2), *supra*, and quoted with approval in *Abney v. Abney*, 575 S.W.2d 842, 844 (Mo.App.1978), "the focus of our statute seems more specifically on income-producing property . . . ." *In re Marriage of Schulte*, 546 S.W.2d 41, 49 (Mo.App. 1977), and *Arp. v. Arp.*, 572 S.W.2d 232, 234 (Mo.App.1978), are even more pointed, and make short shrift of the husband's argument by disavowing any duty on the part of the wife to "consume" the family home before being entitled to maintenance.

■ The remaining phase of the husband's attack on the decretal portion of the original decree awarding maintenance purports to be predicated upon Section 452.-335.2(1), (6), RSMo 1978: "The maintenance order shall be in such amounts . . . as the court deems just, and after considering all relevant factors including: (1) [t]he financial resources of the party seeking maintenance, including marital property apportioned to him, and his ability to meet his needs independently, . . .; . . (6) [t]he ability of the spouse from whom maintenance is sought to meet his needs while meeting those of the spouse seeking maintenance; . . . .". Using these two specifically designated factors as a springboard for his argument, the husband char-

acterizes the monthly maintenance award of $350.00 as "grossly excessive" and, ipso facto, inconsistent with the statutory guidelines established by Section 452.335.2, *supra*. As related to factor (1), the course of the husband's argument is essentially the same as previously adduced—after sale of the family home by the wife and reinvestment of the net proceeds, she would not be entitled to any maintenance, or, at best, only a minimal amount. This argument is rejected for the same reasons that it was previously rejected. As related to factor (6), the course of the husband's argument seeks to negate all consideration of the husband's past earning capacity. This argument is antithetical to prevailing law. *Brown v. Brown*, 537 S.W.2d 434, 437 (Mo.App.1976); *Klinge v. Klinge*, 554 S.W.2d 474, 476 (Mo. App.1977); *Broyles v. Broyles*, 555 S.W.2d 696, 699 (Mo.App.1977). The husband, by innuendo, attempts to circumvent the efficacy of this line of authority by suggesting that the total sum of the wife's earnings and the amount of maintenance which she was awarded would produce the anomalous result of her being afforded a higher standard of living than the husband at the latter's expense. The husband's past and present earning capacity and receipt of all income producing marital property deflate this argument. Concededly, the husband's shift in employment from the sale of life insurance to the sale of real estate was accompanied by a temporary slump in income. Even so, the amount of maintenance awarded to the wife cannot be said to be excessive when both his past and present earnings are taken into consideration, as properly should be done. Whether the husband's future earning capacity consistently slumps to an extent which might prompt and support modification of the present maintenance award awaits another time and occasion.

■ All arguments leveled by the husband at the amount of maintenance awarded to the wife are collectively dashed by this very telling and highly appropriate language found in *Sawtell v. Sawtell*, 569 S.W.2d 286, 288 (Mo.App.1978): "In deter-

mining the reasonableness of the award, the court balances the spouse's ability to pay against the reasonable needs of the spouse seeking maintenance. *Badalamenti v. Badalamenti,* 566 S.W.2d 229 (Mo.App.1978); *Larison v. Larison,* 524 S.W.2d 159 (Mo.App. 1975). To warrant appellate interference, the amount of the maintenance award must be patently unwarranted or wholly beyond the means of the spouse who pays maintenance. *In re Marriage of Schulte, supra,* [546 S.W.2d 41 (Mo.App.1977)] . . . Applying these rules to the facts presented here, the wife has no property other than the marital property apportioned to her, and this property was non-income producing. Her earnings are not sufficient for her to support herself. Therefore, the two conditions prescribed by § 452.335 are met, and it was appropriate for the trial court to make a maintenance award."

■ Appropriately adverting at this point to the resistance asserted by the husband to the temporary award of maintenance, one immediately senses a haunting refrain to the resistance offered to the maintenance awarded by the dissolution decree. In line with his earlier argument directed toward the amount of maintenance fixed by the dissolution decree, the husband argues that the amount awarded as temporary maintenance was not justified vis-a-vis his capacity to pay, and that, in fact, he lacked the capacity to pay said amount. The amount awarded as temporary maintenance was $300.00 per month as opposed to $350.00 per month, the amount of maintenance fixed by the dissolution decree. It would be the height of judicial inconsistency to hold that the award of $300.00 per month for temporary maintenance was improper having already held that the amount of $350.00 per month under the decree of dissolution was not improper. The husband's attack on the award of temporary maintenance likewise fails.

■ The amount of $2,000.00 awarded to the wife to defray attorney fees barely comes under scrutiny by reason of the husband's bald assertion that the amount awarded was "excessive". As raised by the husband, the following question immediately comes to mind. Excessive in what sense—as measured by the quality and amount of services rendered, the means and ability of the wife to pay, or by the husband's ability to pay? Either way, the scope of appellate review laid down in *Murphy v. Carron, supra,* in conjunction with the following dimension carved out in *Kieffer v. Kieffer, supra,* [590 S.W.2d 915, 919 (Mo. banc 1979)], appear to control: "However, § 452.355 does make clear that the financial resources of the parties must be considered. Other factors are to be taken into account as well. How they balance will vary from case to case and certainty of result cannot be projected. Only when the trial court is shown to have abused the broad discretion with which it is vested in this regard should its award (or orders) be overturned." This seemingly added dimension to appellate review of awards of attorney fees suggests implied recognition of their unique status and the peculiar expertise of trial courts to reckon with them. Reverting for the moment to certain facts surrounding the award of attorney fees, it is appropriate to note that the total fee rendered by the wife's attorney amounted to $3,711.00 for 85 hours of services, same computing out at an average hourly rate of $43.65. Further, the wife paid $1,500.00 of the $3,711.00 charged as attorney fees by means of a loan obtained from her parents. An integrated application of *Murphy v. Carron, supra,* and *Kieffer v. Kieffer, supra,* anent the record evidence appertaining to the award of attorney fees, leaves no recourse but to affirm the amount awarded by the trial court.

■ The only remaining issue is whether there was a division of all marital property. Resolution of this issue lies in a readily ascertainable fact matrix. The present controversy swirls around certain items of personal property falling within the generic term "household furniture, goods and appliances". The husband contends that certain items of "household furniture" and "household goods", partaking characteristics of family antiques or heirlooms descending

from his family, were never accounted for in the division of marital property. Incidentally, the husband did not question their status as marital property as the evidence demonstrated that such items came to both spouses jointly during the marriage, and, understandably, the husband made no effort to overcome the presumption that they were marital property. See *Forsythe v. Forsythe*, 558 S.W.2d 675, 678 (Mo.App. 1977). A number of items of personal property falling within the category around which this dispute centers were specifically given to the husband by paragraph 11 of dissolution decree. Moreover, paragraph 12 of the dissolution decree provided as follows: "Petitioner [wife] shall have as her sole and exclusive property free and clear of any claim by Respondent [husband], all the remaining household furniture, goods, and appliances not given to Respondent [husband] in Paragraph 11 above, . .". Such clearly refutes any notion that the division of marital property was incomplete in the sense urged by the husband.

Judgments affirmed.

All concur.