In re the MARRIAGE OF Flora Christine MILLER, Petitioner–Respondent,

and

Melvin Merrell Miller, Respondent–Appellant.

No. 11497.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 11, 1980.

James M. Hux, Hux & Green, Sikeston, for respondent–appellant.

Robert A. Dempster, Dempster, Fuchs & Barkett, Sikeston, for petitioner–respondent.

MAUS, Chief Judge.

This is an appeal from the financial aspects of a decree dissolving a marriage. The appellant–husband and respondent–wife were married November 2, 1944. They separated about November 7, 1978, when the wife confirmed the husband's unfaithfulness. Three children had been born to

the marriage. The older two were emancipated. The youngest, a daughter 18–years old, lived with her mother after the separation. The daughter had been employed at a discount store, but at the time of trial had lost her job. She planned to attend college.

The marital property consisted of a home, household goods, garden tools and power tools, 116 shares of J. C. Penney stock, $173 in a J. C. Penney profit sharing plan and two Chevrolet automobiles. The Penney stock was valued at $30 per share, but was not available to the wife until she left the employment of the company. One 1975 Chevrolet automobile was subject to a mortgage to secure approximately $2200. A son had taken over this automobile as the husband could not make the payments. The other 1975 Chevrolet "really belonged" to the 18–year–old daughter. It was subject to a mortgage to secure approximately $2900. The husband did not contemplate making the payments of $94 per month, but said he would try if the daughter could not do so. Each party had their personal possessions and a separate bank account of a minimal amount. The husband was employed as a route salesman and had a gross annual earnings of $10,414.18. His take–home pay per week varied from $147 to $160. He lived with a friend and estimated his living expenses at $100 per week. The wife had been employed by J. C. Penney for 16 years and was a catalogue supervisor at the time of the dissolution. Her gross annual earnings were $9,568 and her take–home pay was $501.44 per month. She testified that her monthly living expenses were $653.06 per month and of that amount she itemized $528.06 per month. Her itemization did not include an amount for such things as clothing and recreation. The trial court dissolved the marriage, placed the unemancipated daughter in the custody of the wife and granted the wife $25 per month maintenance. No mention was made concerning child support. The home, subject to existing encumbrances, and furniture were awarded to the wife. She was also awarded "all other property now in her possession". The husband was awarded the two automobiles and all other property in his possession. This court, as did the parties, construes the award to the wife of all property in her possession to include the 116 shares of J. C. Penney stock, the profit sharing fund and garden and power tools, as well as her personal belongings and bank account.

■ Appellant's first point is that the trial court erred in awarding the respondent maintenance of $25 per month. He does not complain of his inability to pay, but contends the appellant did not establish a need for maintenance. He argues the absence of need was shown by the fact that at the time of separation the amount in the respondent's bank account was $200 to $300 and at the time of trial it was approximately $200. This argument was countered by the wife's testimony that during the period in question she did not buy many things she actually needed and at the time of trial she had not paid her last month's bills. Appellant also argues that no need was shown because the respondent calculated her stated financial deficiency of approximately $152 per month on the basis of gross monthly earnings of $736, when in fact her gross weekly earnings were $184, which would result in gross monthly earnings of approximately $797. However, the appellant on several occasions testified her net monthly earnings were $501.44. The evidence concerning deductions from her gross earnings is sketchy. It was established they included $35 per week (or $151.65 per month) for taxes and $12 per month for medical insurance. There was also evidence that through her employer she carried accidental death insurance as well as group hospitalization and dental plans. Whether or not there was a separate deduction for the dental plan is not shown. In all events, even considering the same favorably to the appellant, the evidence does establish the respondent's need for maintenance. Balancing the need with the ability to pay, it cannot be said that $25 per month is unreasonable. *Sawtell v. Sawtell*, 569 S.W.2d 286 (Mo.App.1978). The appellant's first point is denied.

The appellant's second point is that the trial court erred in awarding substantially all of the marital property to the respondent. Under this point the appellant does not complain of the award of the household furnishings to the respondent, apparently recognizing his concession of those items at the trial. Nor does he directly attack the award of the Penney stock to the respondent, apparently recognizing its source and the fact it is not available until respondent's termination of employment. Appellant bases this point upon the award of the home to the respondent. In this connection, the respondent's uninformed estimate of its value was $20,000 and the appellant's was $30,000. The home was subject to encumbrances to secure the payment of approximately $8,400. Under the circumstances, a determination of the actual value of the five–room dwelling would not be decisive.

As the appellant points out, the trial court was required to divide the marital property as it "deems just after considering all relevant factors" including four factors specifically set forth. § 452.330.1. The fact there was great disparity in the value of the property awarded to the respondent as compared to that awarded to the appellant does not in the circumstances of this case establish error. *D___ L___ L___ v. M___ O___ L___*, 574 S.W.2d 481 (Mo.App.1978). Such disparity is only one factor to be considered. § 452.330.1(2); *Arp v. Arp*, 572 S.W.2d 232 (Mo.App.1978). The court was also directed to consider "[t]he contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as a homemaker". § 452.330.-1(1). There was evidence the respondent had been employed for 16 years and devoted her earnings to the family. There was also evidence that the appellant made the payments required by the first mortgage upon the home, but for at least the last three years the appellant did not know what he did with the balance of his earnings. The appellant offered no explanation of what he did with the balance of his earnings. When a room was added to the house an additional loan of $2,000 was obtained and paid by the respondent. When the bathroom was remodeled an additional loan was obtained and is being paid by the respondent. When the home was newly carpeted, painted and otherwise refurbished, the cost was paid by respondent withdrawing $3,402.00 from her savings plan. The trial court was also directed to consider the economic circumstances of each spouse and the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children. § 452.330.1(3). In this case, the respondent was awarded custody of the only unemancipated child who had lived with her since the parties' separation. Lastly, the trial court was also directed to consider "[t]he conduct of the parties during the marriage". § 452.330.1(4). In this connection it must be noted that the appellant had for four years prior to the separation engaged in an active liaison with a waitress in a coffee shop. When he was confronted by the respondent he told his wife he would marry that woman if she would have him. However, at the time of trial appellant stated that when the divorce went through he wasn't planning on marrying anyone, he had had second thoughts, but admitted that he was still seeing the waitress. Three of the four statutorily specified factors strongly preponderated in favor of the respondent. In the circumstances of this case, the trial court was not required, as appellant suggests, to require the respondent to make deferred payments to him or to deprive the respondent of her home by ordering a sale. "The desirability of awarding the family home to the wife, together with other circumstances, might create a situation where the wife receives the bulk of the marital assets, but not be inequitable or an abuse of discretion." *In re Marriage of Brewer*, 592 S.W.2d 529, 534 (Mo.App.1979). Also see *Kaczmarczyk v. Kaczmarczyk*, 593 S.W.2d 252 (Mo.App. 1980). The award of the marital property "as the court deemed just" was supported by the evidence and a consideration of these three factors. *Arp v. Arp, supra; In re Marriage of Burris*, 557 S.W.2d 917 (Mo.

App.1977). The appellant's second point is denied.

■ The appellant's final point is that the trial court erred in awarding the respondent attorney fees in the amount of $660. He incorrectly argues "there must be an absence of the means to pay on the part of the spouse seeking the award". *Pederson v. Pederson*, 599 S.W.2d 51 (Mo.App. 1980). The ability of a spouse to pay attorney fees is but one factor to be considered, *Kieffer v. Kieffer*, 590 S.W.2d 915 (Mo. banc 1979). However, even if need was a prerequisite, the facts stated under a previous point demonstrate that need. The appellant testified his living expenses were $100 per week and his net earnings were $147 to $160 per week. Even considering the award of $25 per month maintenance, the appellant was in a better position to pay those fees than the respondent. The trial court did not err in awarding attorney fees and this point is denied. The judgment is affirmed.

PREWITT, P. J., and BILLINGS, J., concur.